## GEORGE YOUNGER V. STATE OF NEBRASKA.

FILED DECEMBER 5, 1907.   NO. 15,292.

1. Proof of reputation is properly confined to the reputation of the
individual in the vicinity in which he lives or in which he had
formerly resided.

2. Criminal Law: EVIDENCE.   Where articles are offered in evidence
which are pertinent to the issue, the court will not exclude them
on account of the manner in which they were obtained.

3. ———: INSTRUCTIONS.   It is not error to refuse an instruction re-
moving certain evidence from the consideration of the jury at
the close of the trial, where the evidence was received without
objection at the time of its admission, and no motion then made
to strike it out.

4. ———: EVIDENCE: HARMLESS ERROR.   Where a defendant in a prose-
cution for rape calls out from the prosecutrix on cross-examina-
tion the description of her assailant that she gave at the time
she made complaint, it is not prejudicial to him to allow the
person to whom the complaint was made to testify that imme-
diately after the assault the prosecutrix complained that she had
been assaulted by a negro, and to give her description of him
then made.

5. ———: INSTRUCTIONS.   Where the testimony of the prosecutrix in
a rape case as to the fact of the assault is fully corroborated, and
her evidence as to the identity of her assailant is also sustained
by evidence in corroboration, it is not prejudicial error for the
court to omit to instruct as to the necessity of corroboration,
when the only instruction requested by the defendant upon that
point does not fully and correctly state the law.

6. Evidence examined, and *held* to sustain the verdict.

ERROR to the district court for Lancaster county:
EDWARD P. HOLMES, JUDGE.   *Affirmed.*

*James L. Caldwell,* for plaintiff in error.

*W. T. Thompson, Attorney General* and *Grant G. Mar-
tin, contra.*

LETTON, J.

Plaintiff in error was convicted in the district court
for Lancaster county of rape with force and violence upon

one Myrtle Furlong, and prosecutes error to this court. A brief statement of the facts is necessary to the understanding of the questions presented. On the night of February 6, 1907, the prosecuting witness, a girl between 15 and 16 years of age, who worked in the office of the Nebraska Telephone Company near Thirteenth and O streets in the city of Lincoln, stopped work at 10 o'clock. A few minutes afterwards she left the office with two other young women, who accompanied her to a candy store, where they spent five or six minutes. From thence she walked to the corner of Fourteenth and O streets, expecting to take an Interurban street car to her home. The car had gone, and she started to walk. She went north upon the west side of Fourteenth street, and had gone between four and five blocks when she saw a man cross the street. He came up and walked beside her for a few steps, and after requesting her to have sexual intercourse with him, which she refused, he seized hold of her, choked her, forced a handkerchief into her mouth as a gag, and dragged her into an alley. He first threw her down on a manure pile near the street, and then dragged her to an empty sleigh about half way in the alley between Thirteenth and Fourteenth streets. He there violently and forcibly tore nearly all her clothing from her person, and committed a forcible and brutal assault. As soon as she was released, he ran away, running west from the scene of the assault. As soon as the prosecutrix could gather the remnants of her clothing about her, she went to the back door of the nearest house and asked admittance. There were three ladies in the house, whom she told she had been assaulted by a negro, and described his appearance and clothing as nearly as she could. The description she gave was communicated by telephone to the police station, and the defendant was arrested about midnight as answering the description given. He was positively identified by the prosecuting witness, both by his appearance and the sound of his voice, and also by another witness who said he saw him about 10 minutes

after 10 o'clock that night standing near the intersection of Fourteenth and R streets, near an electric light, a distance of about one and one-half blocks from the alley where the crime was committed, and on the same side of the street where the assailant stood when first seen by Miss Furlong. The defense was an alibi. The defendant's occupation is that of a porter or janitor, taking care of a bank and office at the corner of Eleventh and O streets, a distance of about six and one-half blocks from the alley where the crime was committed. He went upon the stand, and testified that about 10 o'clock that night he was in the bank; that he went from there to a cigar store close by to get a pail of water, and named a number of persons that he saw while he was in the cigar store, a little after 10 o'clock; that he drank in the basement with one Smith, and that he went again to the bank and was mopping the floor until about 20 minutes to 11 o'clock, when he went back to the basement and remained there until after 11 o'clock. Two of the persons whom he stated he saw a little after 10 o'clock in the cigar store testified they saw him there from about 15 minutes to 10 to 10 o'clock, and a witness whom he says he saw about 10:30 testifies that he saw the defendant about 15 minutes to 11 o'clock that night in the basement with the witness Smith. The defendant's testimony is, to some extent, corroborated by the witness "Red" Smith, who testifies, in substance, that about 10 o'clock he saw the defendant attending to his work at the bank; that the witness was in the basement of the building, and that 10 minutes after 10 the defendant had taken a pail of water into the bank from the cigar store, and then came out and went into the cellar where he was; that he heard him in the bank for 15 minutes after he left the cellar; that he saw him again that night at about a quarter of 11 in the basement, where they again drank together, and that it was about 20 minutes between the two times. He fixes the last time the defendant came out of the bank as "in the neighborhood of 10:30." On cross-examination, this witness says

that he did not see Younger between 10:15 and 10:40; that he, Smith, left the building after 10:15, and was gone in the neighborhood of 20 minutes; that he was drinking a good deal that night, and that in his references to time he is merely guessing. The day after the assault the prosecuting witness was taken to the police station, and she pointed out the defendant from a number of other colored men as being her assailant. The clothing which the defendant wore when arrested tallied with the description given by the prosecuting witness, and also by the witness Hamilton, who says he saw him at the street corner just a few minutes before the assault.

The first assignment of error is that the court wrongfully refused a continuance. The preliminary examination was held a few days after the assault. The information was filed on February 26. On March 2 the defendant filed a motion for continuance, alleging in substance, as grounds therefor, the existence of excitement and prejudice, want of counsel, lack of time to communicate with his friends, who live in Texas and Colorado, also lack of time to investigate the character of the prosecutrix, and to establish his own good character. This continuance was asked until the next term of court. This motion was presented to the court on that day, but was overruled. The court then set the trial for March 11, and appointed as counsel for the defendant the same attorney that appeared for him in the preliminary examination. On the 5th day of March another motion and affidavit for continuance over the term was filed, somewhat argumentative in form; the substance of it being that counsel, for a number of reasons, was unable to prepare the case for trial in the length of time allowed for that purpose. This motion was overruled, but the case was passed for trial until March 18. On March 18 a third application for a continuance was made, the affidavit of counsel in support thereof being to the effect that a witness in St. Joseph, Missouri, would testify as to the good reputation of the defendant for truth and veracity and

virtue and chastity; that counsel had been unable to investigate the reputation of the prosecuting witness in like matters for want of time; and that counsel had been sick during the preceding week and was not able to enter upon the trial of the cause. This motion was overruled and an exception taken. From a consideration of these affidavits, we think the court did not abuse its discretion in overruling the motions. As to the first and second, the court extended the time for preparation for trial. The disheveled, bruised and bloody condition of the prosecutrix immediately after the assault formed such positive evidence of its commission that the same necessity did not exist for the investigation of her character and reputation as in most cases where it is claimed that such an assault had been committed. The testimony of the witness in St. Joseph, as set forth in the third affidavit, standing alone, would not be admissible, since it only alleges that the witness had known the defendant in St. Joseph, and that his reputation in such matters is good, without anything to show how long ago it was that the defendant was in St. Joseph, or that he had ever been a resident there. Proof of reputation is properly confined to the reputation of the individual in the vicinity in which he lives or in which he had resided. There are no facts alleged to bring the testimony offered within this requirement.

The second, third and fourth assignments of error are based upon the contention that the prosecutrix was not corroborated, and that no proof was offered that she "was not a daughter or sister of the defendant." As to the fact of the criminal assault, it is seldom we find a case in which the corroborative testimony is so clear and convincing. The condition of the clothing and body of the prosecutrix immediately after the assault, as testified to by the witnesses who were present at the house of Mrs. Chapman at the time she applied for aid, is conclusive on this point. It is urged that the witness was not corroborated as to the identity of the defendant, but the

testimony of the witness Hamilton is that he saw him close by a few minutes before the outrage. He described his clothing in the same manner as the complaining witness, and the defendant was found by the police officers a short time after the assault dressed in precisely the same manner as the assailant, with a long black overcoat, light trousers, a black derby hat, a dark muffler, and no collar. This evidence furnished all of the corroboration necessary, even if corroborative evidence of the identity of the assailant is necessary in a case of this nature where the assault is evident, more than in a case of a violent assault of another character, which is not our opinion, although some courts of respectable authority have so held. As to the lack of proof that the prosecutrix was not the daughter or sister of the defendant, the record shows that the defendant is a negro and the prosecutrix a white person. They were both witnesses, and testified before the jury, and the law does not require proof of that which is self-evident.

The fifth assignment is that the particulars of the complaint made by the prosecutrix were permitted to be given in evidence. Examination of the record, however, shows that the witness did not relate the particulars, but merely testified that Miss Furlong complained that she had been nearly killed by a negro, and that she gave a description of the person who assaulted her. This was only a few minutes after the assault, and while the witness was still sobbing and trembling from its effects. This was a spontaneous and unpremeditated statement, and admissible as a part of the res gestæ in corroboration of the prosecutrix. Moreover, the evidence shows that the description was identical with that given by the prosecutrix on the witness stand, and which was used by the police in looking for the guilty person. We have held that the fact of the complaint being made and the name of the assailant then given may be testified to in corroboration. Welsh v. State, 60 Neb. 101. See, also, State v. Andrews, 130 Ia. 609; State v. Hutchinson, 95 Ia. 566; Bannen v. State,

115 Wis. 317; *Hannon v. State,* 70 Wis. 448. Besides, the defendant had previously called out the same facts by asking the prosecutrix how she described her assailant to the ladies at Mrs. Chapman's.

Objection is made to the introduction of the defendant's shoes in evidence, upon the ground that they were taken from him by force and that it is compelling him to furnish testimony against himself. A like question has been before this court a number of times, and it has been held that, where matters are offered in evidence on the trial of the cause which are pertinent to the issue, they should be admitted, and the court will not take notice how they were obtained. *Geiger v. State,* 6 Neb. 515; *Russell v. State,* 66 Neb. 497. A full discussion of the admissibility in evidence of articles forcibly taken from the possession of the defendant in a criminal case is to be found in *Williams v. State,* 100 Ga. 511, 39 L. R. A. 269. The cases seem to be uniform in support of the admissibility of evidence thus obtained. 1 Bishop, Criminal Procedure (4th ed.), secs. 210-212.

It is complained that the witness was allowed to testify, over objection, to foot prints in the snow, and that the iron band on the heel of one of the shoes looked similar to the tracks in the snow. This question was not objected to at the time, and no motion was made to strike out the testimony.

A question which has given us some concern is whether or not the instruction requested by the defendant at the close of the trial relating to the shoes introduced in evidence was erroneously refused. This instruction, in substance, is that, before the shoes offered in evidence can be considered by the jury, they must find that there was a careful and correct measurement of the tracks at the time, and that the marks on the shoes must exactly fit the impression made in the snow; that the mere memory of the witnesses as to the shape of the impression made after so long a period is dangerous, and that they should disregard the evidence as to the shoes in arriving at their verdict.

We have already seen that it was not error to admit the
shoes in evidence over the objection that they were forc-
ibly taken away from the defendant without his consent.
The only material evidence given as to the foot tracks was
given by Mrs. Ledky, as follows: "A. At each place
where I found the snow beaten down where they had
scuffled there were the same tracks, a woman's track and
a man's track, and in each place the man's track showed
as if the heel of the shoe was flat, and it looked as if the
heel on the right foot of the right shoe had been mended
and a piece set in. Q. (Handing witness exhibit 3) I
would ask you to examine this right shoe of exhibit 3,
and state if that iron band upon the heel would look
similar to the track that seemed to be in the snow. A.
Yes; I suppose." The witness further testified that she
did not compare the track and shoe afterwards, and never
saw the shoe closely until the time of the trial. The
opinion of the witness as to whether or not the iron band
on the heel would look similar to the track that seemed
to be in the snow, without any comparison having been
made by her of the tracks and merely upon her recollec-
tion as to the appearance of the tracks several weeks be-
fore, was incompetent evidence, and afforded no aid to
the jury in determining whether the shoes of the defend-
ant were the identical shoes that made the tracks in the
snow. The evidence was admitted without objection, and
no motion was made to strike it out at the time, or to
take it from the consideration of the jury. It was clearly
improper, as being the opinion of the witness as to facts
which the jury were the proper persons to decide; but a
defendant cannot allow testimony to be introduced with-
out objection or moving to strike it out, and wait until the
conclusion of the trial and then ask to have an instruc-
tion directing the jury not to consider it. "It is incum-
bent on the defendant in a criminal case, as it is on a
party in a civil case, if he would avail himself, on error
or appeal, of any irregularities committed on the trial of
the case, to make his objection and to save his exception

*at the time* when the irregularity was committed. Objections to evidence cannot, as a general rule, be made by a *motion to instruct* the jury to disregard the particular evidence." It has been well said: "To allow a party to permit, without objection, the admission of evidence, and for the first time make his objection in instructions, would be intolerable practice. If he had an opportunity to interpose an objection, he cannot take the chances that the testimony will be favorable to him, and, when it turns out otherwise, raise his objection; but must be held to have *waived* it." 1 Thompson, Trials, sec. 700. The shoes themselves would furnish no evidence unless testimony were offered as to the tracks, and the only testimony which could have any weight as affecting the issue was that given orally as to the shape of the heel prints. We think, therefore, the objection to the evidence, embodied in the instruction, came too late. Moreover, the evidence was of the supposititious and inconclusive character above set forth, and we doubt that the defendant was prejudiced by the refusal to instruct the jury to disregard it. The cases which are cited by counsel for defendant hardly go as far as the propositions laid down in his brief.

It is complained that the court did not instruct the jury upon the question of alibi. The record shows, however, the jury were instructed, in substance, that, if they had a reasonable doubt of the presence of the accused at the time and place of the alleged crime, then it was their duty to return a verdict of not guilty. This instruction presented the question of alibi as fully as was necessary.

Error is predicated on the refusal of the court to give instruction numbered 4 asked by the defendant. This, in substance, directed the jury that "there must be evidence corroborating that of the prosecutrix to authorize the jury in convicting the defendant. And, in this case, the evidence of the prosecutrix that the accused was the party who was present there at the time and place and who committed the offense must be corroborated in order to

justify a conviction for the offense charged." This instruction is not correct in law. Corroboration by direct evidence as to the particular fact constituting the crime is not essential. It is enough that the evidence of the prosecutrix be corroborated by facts and circumstances which support her evidence, and from which, together with her testimony as to the principal fact, the inference that the defendant is the guilty party may be reasonably drawn. No corroboration is necessary in such a case as this as to the identity of the defendant. There is no reason for requiring such corroboration that would not exist in the prosecution of any crime committed against the witness. The instruction presented was, for that reason, erroneous. The corroboration as to the particular act was overwhelming, so much so that it cannot be said that any conflict exists upon that point in the evidence. Under such circumstances, the mere failure to instruct the jury, in the absence of any proper request for such instruction, is not reversible error.

It is urged that the court erred in refusing defendant's motion for a new trial, not only upon the grounds of the errors assigned, but on the ground of facts set forth in the affidavit of the defendant's counsel with reference to the public prejudice and bias against the defendant, threats of lynching, changing of the testimony of the witnesses from that given at the preliminary hearing, and other like reasons. This affidavit was resisted by a counter affidavit, filed by the county attorney, denying specifically the facts stated therein, and upon the hearing the motion for a new trial was overruled. The evidence in regard to the allegations of bias and prejudice is contained in these two affidavits alone, and that of the county attorney is sufficient to justify the court in overruling the motion, if it believed the statements therein contained, rather than those in the affidavit of defendant's counsel.

Upon the whole case, taking into consideration the fact that the assault was committed at a point six and one-half blocks from the bank where the defendant was work-

ing, together with the fact that the crime must have been committed between 'about 15 minutes past 10 and 30 or 35 minutes past 10, and that there was ample time for the assailant to have reached the bank after the assault in order to be there by 10 : 45, together with the further fact that the assailant ran west after the assault (in the direction of the bank), and that, during the short period of time necessary to go from the bank to where the man was seen by Hamilton, commit the assault and return to the bank, he was not seen by any one except Smith, who speaks with no certainty as to the time, and as the time he fixes for the defendant's getting the water is contradicted, we think the verdict is supported by the evidence.

Many matters prejudicial to the defendant are stated in the brief to have occurred, which are not contained in the record. These, of course, we cannot consider, and upon the record as it stands before us the judgment of the district court is

AFFIRMED.