RUDOLPH WELCHEK v. THE STATE.

No. 7136.   Decided November 22, 1922.

Rehearing denied January 17, 1923.

**1.—Transporting Intoxicating Liquor—Search and Seizure—Constitutional Law—Search Warrant.**

Where, upon trial of transporting intoxicating liquor, before any evidence was offered, defendant made a motion to have the liquor seized from him by the officers returned to him because the same was taken from his automobile by the officers without a search warrant, and also prayed for an order that the testimony of the officers as to the finding of said liquor be suppressed, and the court denied this motion to which proper exceptions were taken, held that there was no reversible error.

**2.—Same—Federal Authorities—Supreme Court of the United States.**

The Federal authorities cited by the appellant, to-wit, Boyd v. U. S., 116 U. S., 616; Weeks v. New York, 232 U. S., 383, and others, go no further than to decide that in Federal practice .private papers of the accused obtained by Federal officers by search and seizure without warrant will, upon motion made, be returned to the owner and that testimony relative thereto be rejected or suppressed. There is nothing in the instant case upon principle analogous to any of the cases named, nor is there any Federal question raised here.

**3.—Same—Federal Decisions—Extension of Rule Not Followed.**

This court can in no event follow such an extension of the principle involved in said cases as appears in the attempted application thereof in the case of Amos v. United States recently decided and cited by appellant, but prefers to follow the case of Adams v. New York, 192 U. S., 585, which

announces more nearly the sound rule, and because the facts and principles involved in said case are more analogous to those in the instant case.

### 4.—Same—Detection of Crime—Public Policy—Organized Society.

The detection of crime and the punishment of criminals, and the consequent preservation of the lives, liberty, peace and property of the law-abiding part of organized society is the most important function of government, and it not infrequently happens that in the pursuit of this function the rights of the individual citizen must endure for a season where there is an apparent conflict between them and the rights of the general public.

### 5.—Same—Restoring Personal Property Seized.

It is not believed that any court upon motion or petition would deliver to an alleged criminal or those interested in its removal or destruction, personal property whose presence is deemed necessary to the development of a criminal case.

### 6.—Same—Constitutional Law—Unreasonable Searches and Seizures.

There is nothing in the constitutional provision inhibiting unreasonable searches and seizures which lays down any rule of evidence with respect to the evidential use of property seized under search without warrant, nor is there anything in said constitutional provision which can be properly construed as laying down such rule, and the owner's right to the return of such property should be held in abeyance until the same has served the government by its appearance in evidence.

### 7.—Same—Constitutional Law—Evidence—Physical Facts—Rule Stated.

There is nothing in Section 9, Article 1, of our Constitution to prevent the use in a criminal case, testimony of physical facts found on the person or premises of one accused of crime, which are material to the issue in such case, nor to prevent[6] oral testimony of the fact of such finding which transgresses no rule of evidence otherwise pertinent.

### 8.—Same—Rule Stated—Declarations and Acts of Accused.

Under general rules the acts and declarations, both oral and written, of one accused of crime which shed light on the issues before the court are competent; it being excepted that those are not admissible which are made under duress, in confinement or custody, save when coming under certain safeguards, and the method or manner by which such proper testimony came before the court cannot be raised by any attempted application of said Section 9, Article 1.

### 9.—Same—Consent of Accused—Objections to Testimony.

If there be sound objection to testimony, otherwise material, which has been found on the person or in the possession or home of the accused, such objection must rest upon some better reason than that the accused did not consent to its taking or to the entry of such premises.

### 10.—Same—Private Writing—Constitutional Law—Criminative Evidence.

If the evidence offered be of some private writing of the accused which was found on his person when arrested or on his premises when searched by some officer, with or without warrant, the question of its admissibility would be referable to the proposition found in Section 10, Article 1, of our Constitution, which forbids that one be compelled to give evidence against himself in a criminal case.

### 11.—Same—Evidence—Case Stated—Disposition of Liquor Seized.

The liquor found by the officer in the car of the defendant was of weight upon the trial of the case. Its custody for purposes of inspection, taste, examination and disposition was rightfully in the officers of the court during the pendency of this proceeding. After its evidential purpose had been served, if its possession, transportation, manufacture, etc., was not shown to be within some of the exceptions named in the law such liquor might be destroyed, or if lawfully transported returned to the owner.

**12.—Same—Status—Property—Transportation of Intoxicating Liquors.**

It seems clear under our laws that unless said liquor comes within one of the exceptions named in the statute it has no legal status as property. The person transporting, etc., the same is guilty of a felony, and may under certain circumstances be arrested without warrant, and the liquor found on his person, vehicle or premises may be held as evidence against him, and introduced as testimony upon the trial.

**13.—Same—Constitutional Law—Bill of Rights—Unlawful Search and Seizure.**

By nothing in this opinion is intended enlargement of any claim of right to enter private premises without search warrant for purposes of search and seizure. The right of the citizen to be secure in his home and private premises and possessions from such unlawful and unwarranted entry, search and seizure, is as secure as the Bill of Rights can make it, and this court is deciding questions only relating to the admissibility of evidence.

**14.—Same—Giving Evidence Against Oneself—Rule Stated.**

We have not gone into the question as to the right of one who objects to testimony of any act or declaration of his, on the ground that he is compelled to give evidence against himself, because of what seems to us the total lack of pertinent facts in this record to raise any such issue, and the finding of a jug of liquor in defendant's car by the officers in nowise raises the issue that he was thus compelled to give evidence against himself.

**15.—Same—Requested Charge—Bill of Exceptions—Per Cent of Alcohol.**

What we have said disposes of appellant's bills of exception numbers one and two. The special charge, complained of the refusal of which appears in bill of exceptions number three was correctly refused; with reference to the percent of alcohol by volume contained in said liquor, and also as to the defendant's knowledge of the intoxicating qualities or of the percentage of alcohol in said liquor.

**16.—Same—Sufficiency of the Evidence—Intoxicating Liquor—Whisky.**

The evidence clearly showing the liquor found in the possession of appellant, which he was transporting in his car to be whisky, which has been judicially determined by this court to be intoxicating liquor, this court is unable to find fault with the sufficiency of the testimony to support the verdict of the jury, and the same is hereby affirmed.

**17.—Same—Rehearing—Indictment—Duplicity—Purpose of Sale—Surplusage.**

Where, upon trial of unlawfully transporting intoxicating liquor, the indictment charges that defendant did unlawfully and directly transport and possess, and not at any residence, have in his possession whisky and spirituous liquor capable of producing intoxication, and then and there containing in excess of ten per cent of alcohol by volume, said liquor not being for medicinal, mechanical, scientific or sacramental purposes, against the peace and dignity of the State, there was no error in overruling a motion to quash and in arrest of judgment, nor was the same duplicitous, and the allegation of possession could be treated as surplusage.

**18.—Same—Repeal—Amendment—Statutes Construed—Suspended Sentences —Accomplices.**

The amendment of the Act of the Thirty-seventh Legislature, of the Dean Law, did not repeal the former Act denouncing the transportation of intoxicating liquor as an offense. Following Ex parte Mitchum, 91 Texas Crim. Rep., 62, and where prosecution was had under the old law, the accomplice's testimony required corroboration. Fo.lowing. Plachy v. State, 91 Texas Crim. Rep., 405, and other cases, and this also applies to suspended sentences.

93 T. C.—18

19.—Same—Per Cent of Alcohol—Indictment—Charge of Court.

The allegation in the indictment as to the excess of ten per cent of alcohol was not descriptive of the article alleged to have been transported so as to require proof thereof before a conviction could be sustained, and whisky being an intoxicant, and being alleged in the indictment, the court's submission only of the latter was sufficient.

Appeal from the District Court of Brazoria. Tried below before the Honorable M. S. Munson.

Appeal from a conviction of unlawfully transporting intoxicating liquor; penalty, one year imprisonment in the penitentiary.

The opinion states the case.

*J. M. Gibson,* for appellant.—On question of repeal of statute: King v. Missouri, 207 U. S., 506; Gunther v. Texas Land & Mortgage Co., 82 Texas, 503; Womack v. Garner, 30 S. W. Rep., 580.

On question of insufficiency of indictment: Weaver v. State, 239 S. W. Rep., 957; Cook v. State, 236 id., 723; Robinson v. State, 132 id., 944.

On question of unconstitutionality of search and seizure without warrant and admitting testimony thereof ♥ Weeks v. New York, 233 U. S., 653, and cases cited in opinion.

*R. G. Storey,* Assistant Attorney General, for the State.—Cited: Rippey v. State, 219 S. W. Rep., 463; Thielepape v. State, 231 id., 771; Adams v. United States, 192 U. S., 585.

LATTIMORE, JUDGE.—Appellant was convicted in District Court of Brazoria County of the offense of transporting intoxicating liquor, and his punishment fixed at confinement in the penitentiary for a period of one year.

From the evidence it appears without dispute that appellant was arrested about the 22d day of April, 1921, by the sheriff of Brazoria County, who was accompanied by a number of other gentlemen. They appear to have been waiting and looking for appellant who approached them driving an automobile in which was another party by the name of Kolar. Being stopped by the officer and search made of the automobile, three one-gallon jugs of whisky were found therein. It was admitted that the officer had no search warrant at the time. The liquor was taken in possession by the officer and was held by him at the time of trial and one of the jugs was produced in court and exhibited to witnesses, who testified about its contents.

The question of search and seizure is now being raised in nearly all liquor cases tried in this State, if the facts at all justify the defense in interposing objections relating to such question. Said question is squarely raised in the instant case. Before any evidence was offered on the trial appellant made a motion to have said liquor returned to

him, and also prayed for an order that the testimony of the officers as to the finding of same be suppressed. This motion was denied and proper exceptions taken, and the matter carried further during the trial by an objection to the introduction of the liquor, and to the testimony of the officer.

In determining the issues thus raised we decline to be drawn into a discussion of any Federal authorities cited on behalf of the appellant, or into any criticism of same unless the question before us be in some way a Federal question and, therefore, subject to review at the hands of the Supreme Court of the United States, or unless the authorities cited be directly pertinent to the questions involved and be antagonistic to our own views. The cases of Boyd v. United States, 116 U. S. 616, and Weeks v. New York, 232 U. S. 383, and Gouled v. United States, Vol. 10, Advance Opinions U. S. Supreme Court 1920-21, p. 311; go no further than to decide that in Federal practice private papers of the accused obtained by Federal officers by search and seizure without warrant will, upon motion made, be returned to the owner, and that testimony relative thereto be rejected or suppressed. In our judgment there is nothing involved in the instant case upon principle analogous to any of the cases named, nor is there any Federal question here raised. We can see no possible parity or analogy of principle existing between the law governing the taking of private papers, the undeniable property of the owner, and the law governing a case in which the articles seized is intoxicating liquor in which no property right inures under the express laws of this State. The case of Amos v. United States, Vol. 10, Advance Opinions of the Supreme Court of the United States, 1920-21, p. 316, advances no reasons applicable to a prosecution under our State laws and procedure, but inasmuch as the subject matter of that decision is similar to that of the case now before us we respectfully state that we think the opinion in said case rests upon a misapprehension of the purpose of the Fourth Amendment to the Federal Constitution, which is substantially the same as Section 9, Article 1 of our State Constitution, and that the learned court was not justified in applying to the decision of the facts before it in the Amos case, *supra,* the principles announced in the Weeks and Boyd cases, *supra.* This court can in no event follow such an extension of the principle involved in said cases as appears in the attempted application thereof in the Amos case, *supra.* The importance of the matter presented for discussion and the fact, as above stated, that the question is being so universally raised appears to call for a rather extended discussion and announcement by this court, and for that reason we venture an analysis of some of the cases cited and relied upon by appellant.

The opinion in the Weeks case, *supra,* is by Mr. Justice Day, who also wrote for the court in Adams v. New York, 192 U. S. 585. We find ourselves unable to follow Justice Day in his effort at dis-

tinguishing the Weeks case from the Adams case. In the latter case an officers having a search warrant giving him authority to look into the house of Adams for policy slips, found also therein private papers of Adams which he took and which, over objection, were introduced upon the trial of Mr. Adams wherein he was charged with having in his possession paraphernalia of the gambling game of policy. The complaint on appeal to the Supreme Court of the United States from the decision of the Supreme Court of New York was that the private papers obtained by the officers and used in evidence were seized and held in violation of the Fourth and Fifth Amendments to the Federal Constitution. The Fourth Amendment referred to protects the person, houses, papers and effects of citizens of the United States against unreasonable searches and seizures, and provides that if search warrants issue they shall be on affidavit and shall particularly describe the place to be searched and the persons or things to be seized. The Fifth Amendment referred to provides that no person in a criminal case shall be compelled to be a witness against himself. As illustrating the position of the Supreme Court with reference to the admissibility of the private papers so taken by the officers, we quote from the opinion in the Adams case, *supra*.

"The objection raised was to receiving in evidence certain private papers. These papers became important as tending to show the custody by the plaintiff in error, with knowledge, of the policy slips. The question was not made in the attempt to resist an unlawful seizure of the private papers of the plaintiff in error, but arose upon objection to the introduction of testimony clearly competent as tending to establish the guilt of the accused of the offense charged. In such cases the weight of authority as well as reason limits the inquiry to the competency of the proffered testimony, and the courts do not stop to inquire as to the means by which the evidence was obtained. The rule is thus laid down in Greenleaf, Vol. 1, Sec. 254a:

'It may be mentioned in this place that though papers and other subjects of evidence may have been illegally taken from the possession of the party against whom they are offered or otherwise unlawfully obtained, this is no valid objection to their admissibility if they are pertinent to the issue. The court will not take notice how they were obtained. whether lawfully or unlawfully, nor will it form an issue to determine that question.'

The author is supported by numerous cases. Of them, perhaps the leading one is Commonwealth v. Dana, 2 Met. (Mass.) 329, in which the opinion was given by Mr. Justice Wilde, in the course of which he said:

'There is another conclusive answer to all these objections. Admitting that the lottery tickets and material were illegally seized, still this is no legal objection to the admission of them in evidence. If the search warrant were illegal, or if the officers serving the warrant ex-

ceeded his authority, the party on whose complaint the warrant issued, or the officer, would be responsible for the wrong done; but this is no good reason for excluding the papers seized as evidence, if they were pertinent to the issue, as they unquestionably were. When papers are offered in evidence the court can take no notice how they were obtained, whether lawfully or unlawfully; nor would they form a collateral issue to determine that question. This point was decided in the cases of Leggatt v. Tallervey, 14 East, 302, and Jordan v. Lewis, 14 East, 306 note, and we are entirely satisfied that the principle on which these case were decided is sound and well established.'

This principle has been repeatedly affirmed in subsequent cases by the Supreme Judicial Court of Massachusetts, among others Commonwealth v. Tibbetts, 157 Mass. 519. In that case a police officer, armed with a search warrant calling for a search for intoxicating liquors upon the premises of the defendant's husband, took two letters which he found at the time. Of the competency of this testimony the court said:

'But two points have been argued. The first is that the criminatory articles and letters found by the officer in the defendant's possession were not admissible in evidence, because the officer had no warrant to search for them, and his only authority was under a warrant to search her husband's premises for intoxicating liquors. The defendant contends that under such circumstances the finding of criminatory articles or papers can only be proved when by express provision of statute the possession of them is itself made criminal. This ground of distinction is untenable. Evidence which is pertinent to the issue is admissible, although it may have been procured in an irregular or even in an illegal manner. A trespasser may testify to pertinent facts observed by him, or may put in evidence pertinent articles or papers found by him while trespassing. For the trespass he may be held responsible civilly, and perhaps criminally; but his testimony is not thereby rendered incompetent.' Commonwealth v. Acton, 165 Mass. 11; Commonwealth v. Smith, 166 Mass. 370.

To the same effect are Chastang v. State, 83 Ala. 29; State v. Flynn, 36 N. H. 64. In the latter case it was held:

'Evidence obtained by means of a search warrant is not inadmissible, either upon the ground that it is in the nature of admissions made under duress, or that it is evidence which the defendant has been compelled to furnish against himself, or on the ground that the evidence has been unfairly or illegally obtained, even if it appears that the search warrant was illegally issued.' State v. Edwards, 51 W. Va., 220; Shields v. State, 104 Alabama, 35; Bacon v. United States, 97 Fed. Rep., 35; State v. Atkinson, 40 S. Car., 363; William v. State, 100 Ga., 511; State v. Pomeroy, 130 Missouri, 489; Gindrat v. The People, 138 Illinois, 103; Trask v. The People, 151 Illinois, 523; Starchman v. State, 62 Arkansas, 538.

In this court it has been held that if a person is brought within the

jurisdiction of one State from another, or from a foreign country, by the unlawful use of force, which would render the officer liable to a civil action or in a criminal proceeding because of the forcible abduction, such fact would not prevent the trial of the person thus abducted in the State wherein he had committed an offense. Ker v. Illinois, 119 U. S., 436; Mahon v. Justice, 127 U. S., 700."

Elsewhere in the opinion occurs the following:·

"The Supreme Court of the State of New York, before which the defendant was tried, was not called upon to issue process or make any order calling for the production of the private papers of the accused, nor was there any question presented as to the liability of the officer for the wrongful seizure, or of ·the plaintiff in error's right to resist with force the unlawful conduct of the officer, but the question solely was, were the papers found in the execution of the search warrant, which had a legal purpose in the attempt to find gambling paraphernalia, competent evidence against the accused?  We think there was no violation of the constitutional guaranty of privilege from unlawful search or seizure in the admission of this testimony.  Nor do we think the accused was compelled to incriminate himself:  He did not take the witness stand in his own behalf, as was his privilege under the laws of the State of New York.  He was not compelled to testify concerning the papers or make any admission about them.

The, origin of these amendments is elaborately considered in Mr. Justice Bradley's opinion in the Boyd case, supra.  The security intended to be guaranteed by the Fourth Amendment against wrongful search and seizures is designed to prevent violations of private security in person and property and unlawful invasion of the sanctity of the home of the citizen by officers of the law, acting under legislative or judicial sanction, and to give remedy against such usurpations when attempted.  But the English and nearly all of the American cases have declined to extend this doctrine to the extent of excluding testimony which has been obtained by such means, if it is otherwise competent.  In Boyd's case the law held unconstitutional, virtually compelled the defendant to furnish testimony against himself in a suit to forfeit his estate, and ran counter to both· the Fourth and Fifth Amendments.  The right to issue a search· warrant to discover stolen property or the means of committing crimes, is too long established to require discussion.  The right of seizure of lottery tickets and gambling devices, such as policy slips, under such warrants, requires no argument to sustain it at this day.  But the contention is that, if in the search for the instruments of crime, other papers are taken, the same may not be given in evidence.  As an illustration, if a search warrant is issued for stolen property and burglars' tools be discovered and seized, they are to be excluded from testimony by force of these amendments.  We think they were never intended to have that effect. but are rather designed to protect against compulsory testimony from·a

defendant against himself in a criminal trial, and to punish wrongful invasion of the home of the citizen or the unwarranted seizure of his papers and property, and to render invalid legislation or judicial procedure having such effect."

The distinction between the Adams case and the Weeks case seems to be based on the proposition that in the latter the officer who seized the private papers of the accused, had no search warrant and that therefore the objection to the introduction of said papers should have been sustained,—while in the Adams case it appears that the officer had a search warrant but that same admittedly did not describe or comprehend the private papers which were seized by him during the progress of his search of the home of the accused, and the introduction of which was objected to. We confess, as stated above, our inability to understand any legal distinction. If it is sound to say that one who enters with authority only to search for a stolen watch, may seize and take to court and use as evidence any letters, memoranda or private papers of the accused which he may have found in the course of his search,—then it seems to us sound to say that if the officer enters the house or curtilage of the accused at all, either with or without warrant, and finds therein articles possessing evidential value, he may take same and use them as evidence. We believe the Adams case not only to announce more nearly a sound rule but also that the facts and principles involved in said case are more analogous to those in the case before us, and that the reasoning and conclusion reached by the court in the Adams case appeal more to our judgment than that announced in the Weeks case later. The Amos case, supra, which was rendered upon the authority of the Boyd and Weeks cases, and that of Silverthorne Lumber Co. v. United States, 251 U. S., 385, lays down the rule in Federal procedure that in a case where the Federal officers enter the house of the accused without search warrant and there find illicitly distilled liquor upon which the government claims its tax had not been paid, that upon motion duly made the liquor should be returned to the accused and the testimony of the officer as to such finding should be suppressed. We entertain the most profound respect for the opinions of the Supreme Court of the United States and feel ourselves obligated to follow them in all cases involving any Federal question, and also in all other cases where their judgment is at all compatible with our own judgment as to what disposition should be made of questions arising under our State laws and procedure.

The detection of crime and the punishment of criminals and the consequent preservation of the lives, liberty, peace and property of the law-abiding part of organized society is one of the most important functions of government, and it not infrequently happens that in the pursuit of this function the rights of the individual citizen must endure for a season when there is an apparent conflict between them

and the rights of the general public. One whose property is stolen or whose house is burglarized or whose property in other ways which might be instanced becomes necessarily a link in a chain of evidence might find himself forced to leave such property in the custody of the courts till the rights of the general public to have present all testimony to develop a criminal case have been observed, unless he can satisfy the authorities that he would produce such property in court when its presence became necessary. It is not believed that any court upon motion or petition would deliver to an alleged criminal or those interested in its removal or destruction, personal property whose presence is deemed necessary to the development of a criminal case. It is no argument against such right of the courts to retain the custody of such property, that the home of the owner was entered without his consent, or the property was violently taken from his person or possession. Indeed the person of a witness may, without his consent, be held in custody of the court for the sake of obtaining his testimony under circumstances which might be set forth.

In our judgment, however, the proper decision of the question before us rests on the fact that there is nothing in the constitutional provision inhibiting unreasonable searches and seizures which lays down any rule of evidence with respect to the evidential use of property seized under search without warrant, nor do we think anything in said constitutional provision can be propertly construed as laying down such rule. It seems to us that it is going as far as the provision of said Constitution demands to admit that one whose property is wrongfully obtained in any manner, is entitled to his day in some court of competent jurisdiction and to a hearing of his claim for the restoration of such property, and for the punishment of the trespasser, or the announcement that the citizen may defend against such intrusion; but it must always be borne in mind, if there appear the fact that said property by its physical appearance upon the trial will aid the court in arriving at a correct conclusion in a criminal case, that the owner's right to the return thereof should be held in abeyance until said property has served the government,—the whole people, by its appearance in testimony. Nor can the rejection of the proffer in testimony of such property be soundly sustained upon the theory that the officer or person who removed such property having evidential value from the house or curtilage of its owner, should be punished for an entry into said premises without search warrant. To reject such evidence for such reason or to completely return same to the owner and relinquish jurisdiction over same, would in nowise be a punishment to the officer but would rather be a hurt inflicted upon the people whose interest in the punishment of crime suffers because the court may think the officer should be rebuked for the manner in which he obtained the evidence.

We believe that nothing in Section 9, Article 1 of our Constitution,

supra, can be invoked to prevent the use in testimony in a criminal case of physical facts found on the person or premises of one accused of crime, which are material to the issue in such case, nor to prevent oral testimony of the fact of such finding which transgresses no rule of evidence otherwise pertinent.

Under general rules the acts and declarations, both oral and written, of one accused of crime, which shed light on the issues before the court, are competent; it being excepted that those are not admissible which are made under duress, in confinement or custody, save when coming under certain safeguards. The underlying reason for such exception does not rest upon the fact that these acts and declarations are not entitled to be heard inherently, but that experience fears that same may be induced by hope of reward, fear of punishment, etc., or that those interested in the prosecution of the prisoner may not have fairly reproduced, obtained or presented what was said or done by him. But when the evidence offered is of an act, a declaration or a writing which is not tainted by the objectionable circumstances of duress or constraint when uttered or done, or when the question is evidence of the possession by the accused of any property whose custody, ownership or creation by him gives it weight in solving a crime,— the method or manner by which such proffered testimony came before the court can not be raised by any attempted application of said Section 9, Article 1, supra, but may only be determined by rules of evidence which are general and have become fixed in the wisdom and experience of the courts of all civilized countries. If there be sound objection to testimony otherwise material which has been found on the person or in the possession or home of the accused, such objection must rest upon some better reason than that the accused did not consent to its taking or to the entry of such premises. We carry no further this general statement than to say that if the evidence offered be of some private writing of the accused which was found on his person when arrested, or on his premises when searched by some officer with or without warrant, the question of its admissibility would be referable to the proposition found in Section 10, Article 1 of our Constitution, which forbids that one be compelled to give evidence against himself in a criminal case. Even then application of statutory and constitutional rules for the purpose of excluding such testimony might be doubtful when it appeared that such writing had been made prior to arrest, but this question is not now before us.

The liquor found by the officer in the car of appellant was of weight upon the trial of the case. Its custody for purposes of inspection, taste, examination and exhibition was rightfully in the officers of the court during the pendency of this proceeding. After its evidential purpose had been served, if its possession, transportation, manufacture, etc., was not shown to be within some of the exceptions named in our laws relating to intoxicating liquor, such liquor might be destroyed as

is provided in Sec. 30, Chapter 78, General Laws of the First and Second Called Session of the Thirty-sixth Legislature. If the alleged owner, transporter, etc., could show himself entitled to such liquor under any of the situations provided by our law in which liquor may be lawfully had, transported, etc., he might by motion or petition have such liquor returned to him after final judgment in said criminal case.

It seems clear under our laws that unless said liquor comes within one of the exceptions named in the statutes, it has no legal status as property. The person transporting, manufacturing, etc., same is guilty of a felony and he may be arrested by any officer without warrant under circumstances covered by Arts. 259-262, C. C. P., and such intoxicating liquor so found on his person or in his vehicle or on his premises, may be held as evidence as above indicated, and the fact of such finding be given in testimony upon the trial.

By nothing in this opinion is intended enlargement of any claim of right to enter private premises without search warrants for purposes of search and seizure. The right of the citizen to be secure in his home and private premises and possessions from such unlawful and unwarranted entry, search and seizure, is as secure as the Bill of Rights can make it. It should be held sacred by officers and good citizens, and infringement thereon may be defended against to the last limit. The man who so intrudes does it at his peril. This much is said in caution against misunderstanding. We again assert that we are not now deciding any question whose proper solution in anywise militates against complete preservation of every right guaranteed under the provisions of Section 9, Article 1 of the Constitution, securing freedom from unreasonable searches and seizures, but are deciding questions only relating to the admissibility of evidence.

We believe our views in this regard to be in substantial accord with those of the highest courts of most of our states, and with the well considered opinion of Adams v. New York, supra, and with the sound decisions of the Federal judiciary in general. Illustrating this belief, we quote from other authorities:

In People v. Mayer, 205 Pac., 435, an opinion rendered in 1922, the Supreme Court of California said:

"Articles found under an invalid search-warrant on a charge of larceny had erroneously denied to be returned and were afterwards used in evidence:

Without at all minimizing the gravity of such offense, or the sacredness of the right of every citizen to be secure in his person, home, and property from any unlawful invasion by the State, it does not follow that the subsequent detention and introduction in evidence of the property thus wrongfully taken constituted error on the trial of the appellant. The trespass committed in the wrongful seizure of these personal effects by unauthorized officers, and the subsequent use of the same in evidence on the part of the prosecution, were in legal effect

entirely distinct transactions with no necessary or inherent relation to each other. . . . No authority, so far as we have been able to discover, has suggested that the subsequent use of articles so taken as evidence is in itself any part of the unlawful invasion of such constitutional guaranty. The search and seizure are complete when the goods are taken and removed from the premises. Whether the trespasser converts them to his own use, destroys them, or uses them as evidence, or voluntarily returns them to the possession of the owner, he has already completed the offense against the Constitution when he makes the search and seizure, and it is this invasion of the right of privacy and the sacredness of a man's domicile with which the Constitution is concerned. . . .

Upon what theory can it be held that such proceeding (for the return of the articles) is an incident of the trial, in such a sense that the ruling thereon goes up on appeal as part of the record and subject to review by the appellate court? It seems to us rather an independent proceeding to enforce a civil right in no way involved in the criminal case. The right of the defendant is not to exclude the incriminating documents from evidence, but to recover the possession of articles which were wrongfully taken from him. That right exists entirely apart from any proposed use of the property by the State or its agents. . . . The fallacy of the doctrine contended for by appellant is in assuming that the constitutional rights of the defendant are violated by using his private papers as evidence against him, whereas it was the invasion of his premises and the taking of his goods that constituted the offense irrespective of what was taken or what use was made of it; and the law having declared that the articles taken are competent and admissible evidence, notwithstanding the unlawful search and seizure, how can the circumstance that the court erred in an independent proceeding for the return of the property on defendant's demand add anything to or detract from the violation of defendant's constitutional rights in the unlawful search and seizure?

The Constitution and the laws of the land are not solicitous to aid persons charged with crime in their efforts to conceal or sequester evidence of their iniquity. From the necessities of the case the law countenances many devious methods of procuring evidence in criminal cases. The whole system of espionage rests largely upon deceiving and trapping the wrongdoer into some involuntary disclosure of his crime. It dissimulates a way into his confidence; it listens at the keyhole and peers through the transomlight. It is not nice, but it is necessary in ferreting out the crimes against society which are always done in darkness and concealment. Thus it is that almost from time immemorial courts engaged in the trial of a criminal prosecution have accepted competent and relevant evidence without question, and have refused to collaterally investigate the source or manner of its procurement, leav-

ing the parties aggrieved to whatever direct remedies the law provides to punish the trespasser, or recover the possession of goods wrongfully taken."

As further supporting our views see United States v. Bateman, 278 Fed. 231 (search of automobile without search warrant); United States v. Camorata, 278 Fed., 388, (denial of motion to return property); Dillon v. United States, 279 Fed., 639; State v. Cross, 44 W. Va., 315, (pistol found by illegal search); State v. Suitor, 78 Vt., 391 (liquor held admissible regardless of illegality of search); Barrett v. Fish (Vt.), 47 Atl., 174, (Letter,—Court takes no notice of whether obtained legally or illegally); Salt Lake City v. Wight (Utah) 205 Pac. 900, (Liquor case,—Money and liquor obtained without search warrant held admissible); Hughes v. State, 238 S. W. Rep., 588 (Tenn.), (Liquor in auto stopped and searched by officer without warrant, lawfully seized and held); Horton v. State, id., 109 S. W. Rep. 1149; Sioux Falls v. Walser (So. D.) 187 N. W., 821, (Liquor seized under invalid warrant admissible); State v. Quinn (S. C.), 97 S. E. 62, (Liquor found on accused admissible); State v. Laundy (Ore.), 204 Pac. 958, (Papers, etc. taken from person and club premises without warrant, admissible); State v. Simmons (N. C.), 110 S. E. 591, (Liquor taken without search warrant admissible); State v. Mausert (N. J.), 95 Atl., 991 (books on counter seized without warrant); State v. Flynn (N. H.), 36 N. H. 64, (Liquor found admissible irrespective of legality of search); Younger v. State (Neb.), 114 N. W. 170, (Shoes taken by force from the accused); State v. Reed, 53 Mont., 292, (Documents taken from premises by key found on person of accused); State v. Pomeroy, 130 Mo. 489, (Lottery tickets obtained without search warrant); State v. Hoyle (Minn.), 107 N. W. 1130, (Gambling paraphernalia obtained by unlawful search); Commonwealth v. Acton (Mass.), 42 N. E. 329, (Illegal search for liquor); Commonwealth v. Byrnes, 172 Mass., 174, (Butter samples admissible irrespective of warrant); Lawrence v. State, 103 Md., 17, (Stocks found in grip of accused admissible regardless of how procured); State v. Gorham (Me.), 60 Me. 270, (Impropriety of taking will not exclude); State v. Renard (La.), 23 So. 894, (Letters); Bowling v. Com. (Ky.), 237, S. W. R. 381, (Seizure of still without warrant); also Bank v. Com., 227 S. W. R. 455; State v. Schmidt (Kan.), 80 Pac. 948, (Liquor seized without warrant); Gindrat v. People (Ill.), 138 Ill., 103, also Chicago v. Di Salvo, 134 N. E. 5. (Illegality of obtaining weapons, immaterial); State v. Anderson (Idaho), 174 Pac., 124, (Liquors found in car without warrant, admissible); Calhoun v. State, 144 Ga., (Liquor found by illegal search admissible); See Johnson v. State, 109 S. E. 662; State v. Griswold, 67 Conn., 290; People v. Alden, 113 Cal. 264; Benson v. State (Ark.), 233 S. W. R. 758; Chastaing v. State, 83 Ala. 29; Scott v. State, 113 id. To some extent our own views will be found in Rippey v. State, 219 S. W. Rep., 463.

In some of the states there are opinions conflicting with our views here expressed but they are few and we have neither time nor space for a discussion of their reasoning which does not seem to us to be sound in principle or authority. We have not gone into the question as to the right of one who objects to testimony of any act or declaration of his, on the ground that he is compelled to give evidence against himself, because of what seems to us the total lack of pertinent facts in this record to raise any such issue. The finding of jugs of liquor in the car of appellant by the officers in nowise raises the issue that he was thus compelled to give evidence against himself. We may be pardoned for concluding this part of our opinion with a quaint but striking illustration used by Profesor Wigmore in an able article in the American Bar Association Journal for August, 1922 (to which we are much indebted) setting forth the curious reasoning upon which is based the rejection of evidence of the character under discussion upon some idea that the officer obtaining same had wrongfully proceeded. His rather humorous judgment in such case is thus stated:

"Titus, you have been found guilty of conducting a lottery; Flavius, you have confessedly violated the Constitution. Titus ought to suffer imprisonment for crime, and Flavius for contempt. But no! We shall let you both go free. We shall not punish Flavius directly, but shall do so by reversing Titus' conviction. This is our way of teaching people like Flavius to behave, and of teaching people like Titus to behave, and incidentally of securing respect for the Constitution. Our way of upholding the Constitution is not to strike at the man who breaks it, but to let off somebody else who broke something else."

What we have said disposes of appellant's bills of exception Nos. 1 and 2. The special charge, complains of the refusal of which appears in bill of exceptions No. 3, was correctly refused. It sought to have the jury instructed that appellant could not be convicted unless he knew that the liquor he was transporting was intoxicating and contained more than ten per cent alcohol by volume. This is sufficiently disposed of by the statement that there was no evidence supporting any theory of such lack of knowledge on the part of appellant. This applies equally to bills of exception Nos. 4 and 5 in which charges are sought making the guilt of the accused depend upon his knowledge of the intoxicating quality or of the percentage of alcohol in said liquor. This disposes of the matters presented to this court by all the bills of exception appearing in the record. There were some questions raised as to the sufficiency of the indictment, by motion to quash and also in arrest of judgment, but as same have not been perpetuated in bills of exception they will not be discussed. The evidence clearly showing the liquor found in the possession of appellant which he was transporting in his car to be whisky, which has been judicially determined by this court to be intoxicating liquor, we are unable to find fault with the

sufficiency of the testimony to support the verdict of the jury and an affirmance will be ordered.

*Affirmed.*

ON REHEARING

January 17, 1923.

HAWKINS, Judge.—Appellant raised the point as to the sufficiency of the second count in the indictment under which the conviction was had. We disposed of it in our original opinion in the following language.

"There is some question raised as to the sufficiency of the indictment by motion to quash and also in arrest of judgment, but as same have not been perpetuated in bills of exceptions they will not be discussed."

In the motion for rehearing our attention is called to the fact that in the orders of the court overruling the motion to quash, and in arrest of judgment, exceptions were reserved which are matters manifest of record, and consideration will be given the question.

The second count reads as follows:

"And the Grand Jurors aforesaid do further present in and to said court at said term, that, in the County of Brazoria, and State of Texas, on the 22nd day of April, A. D. 1921, Frank Kolar and Rudolph Welchek did, unlawfully and directly transport and possess, and not at any residence, have in their possession whiskey and spirituous liquor capable of producing intoxication, and then and there containing in excess of ten per cent of alcohol by volume, said liquor not being for medicinal, mechanical, scientific or sacramental purposes against the peace and dignity of the State."

Appellant insists that it should have been quashed; (a), because the same is duplicitous in that it undertakes to charge both the transportation and the possession of intoxicating liquor; (b), that said second count charges no offense in so far as the possession of liquor is concerned, because it fails to allege that he was in possession thereof for the purpose of sale; (c), that said second count fails to allege that the transportation of the liquor was for the purpose of sale; (d), that said second count fails to allege from where and to what place said liquor was being transported. Not waiving the exceptions above set out appellant incorporates in the same instrument what he denominates a plea in abatement to the second count in the indictment on the ground, as we understand it, (e), that Chapter 61, 1st and 2d C. S. Thirty-seventh Legislature, page 233 in effect repealed the Acts of the Thirty-sixth Legislature, Chapter 78, in so far as possession and transportation of intoxicating liquor were concerned, or if not repealed was so modified, (f), that by the terms of the Act of Chapter 61 of the amended law, appellant, who was over the age of 25 years was denied the privilege of a suspended sentence, (the

offense of which he was charged having been committed prior to the taking effect of said amendment) and further, (g), that the amended Act enlarged the law so that he might have been convicted at the time of the trial upon the testimony of an accomplice which could not have occurred under the law in effect at the time of the alleged commission of the offense. If the indictment does charge in the same count two felonies; viz: transportation and possession, the same is duplicitous. But to charge possession under the amended law it must be alleged that the possession was for the purpose of sale. (Petit v. State, 90 Texas Crim. Rep., 336, 235 S. W. Rep., 579, and in the same volume will be found Lee v. State, 90 Texas Crim. Rep., 458, 1093; Davis v. State, 90 Texas Crim. Rep., 430, 1094; Dossett v. State, 90 Texas Crim. Rep., 458, 1093, and many other cases to the same effect.) If the pleader in the instant case undertook to charge "possession," it is incomplete, and the averments as to that matter may be treated as surplusage. To charge "transportation" it is not necessary to allege that the liquor was being transported "for sale." (Crowley v. State, 92 Texas Crim. Rep., 103, 242 S. W. Rep., 472; Cecil v. State, 92 Texas Crim. Rep., 359; Copeland v. State, 92 Texas Crim. Rep., 554; Land v. State (No. 7164, opinion November 22, 1922); neither is it necessary to allege "from where or to what place" the "transportation" was made. The amendment of the Thirty-seventh Legislature did not repeal the former act denouncing the transportaton of intoxicating liquor as an offense. Ex parte Mitchum, 91 Texas Crim. Rep., 62, 237 S. W. Rep., 936. We have held that where a prosecution was had for an offense committed before the amendment of the Thirty-seventh Legislature became effective the law of accomplice testimony as it existed when the offense was committed should be applied. Plachy v. State, 91 Texas Crim. Rep., 405, 239 S. W. Rep., 979; Phillips v. State, 92 Texas Crim. Rep., 317. This would also be true as to the suspended sentence law. If otherwise entitled to request it, appellant might have filed his application for suspended sentence although over twenty-five years of age, this limitation not having become effective at the date of the alleged offense. But no request for suspended sentence was filed, and neither is it made to appear in the record that he was deprived of any rights to which he was entitled under the holding in the Plachy and Phillips cases (supra). No witness testified in the case who came within the scope of an accomplice under the law before the amendment.

In submitting the case to the jury the learned trial judge ignored the allegations in the second count in the indictment relative to liquor containing "in excess of ten per cent of alcohol by volume." The evidence showed the liquor being transported was whisky. The jury were properly instructed that "whisky is in law deemed a spirituous liquor, capable of producing intoxication." Exception was reserved to the charge because it failed to instruct the jury that before conviction could be had the proof must show that the whisky contained in ex-

cess of ten per cent of alcohol by volume. We are not inclined to hold that the allegation in the indictment as to the excess of ten per cent of alcohol so descriptive of the article alleged to have been transported as to require proof thereof before the conviction could be sustained, in view of the many decisions of our own court holding that whisky is an intoxicant, and the general rule thereon stated in "Black on Intoxicating Liquors." Sec. 12, page 14.

Believing the case to have been properly disposed of by affirmance, the motion for rehearing is overruled.

*Overruled.*