PD-0077-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 9/10/2015 3:36:43 PM
Accepted 9/11/2015 9:29:27 AM
ABEL ACOSTA
CLERK

No. PD-0077-15

IN THE COURT OF CRIMINAL APPEALS

OF THE STATE OF TEXAS

STEVEN COLE, Appellant

v.

THE STATE OF TEXAS, Appellee

Appeal from Gregg County

\* \* \* \* \*

**STATE'S SUPPLEMENTAL BRIEF**

\* \* \* \* \*

LISA C. McMINN
State Prosecuting Attorney
Bar I.D. No.13803300

JOHN R. MESSINGER
Assistant State Prosecuting Attorney
Bar I.D. No. 24053705

P.O. Box 13046
Austin, Texas 78711
information@spa.texas.gov
512/463-1660 (Telephone)
512/463-5724 (Fax)

**ORAL ARGUMENT REQUESTED**

# **TABLE OF CONTENTS**

INDEX OF AUTHORITIES.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

ARGUMENT.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

PRAYER FOR RELIEF. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

CERTIFICATE OF COMPLIANCE.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

# INDEX OF AUTHORITIES

**Cases**

*Aliff v. State*, 627 S.W.2d 166 (Tex. Crim. App. 1982). . . . . . . . . . . . . . . . . . . . . . 8

*Beeman v. State*, 86 S.W.3d 613 (Tex. Crim. App. 2002). . . . . . . . . . . . . . . . . . . . 8

*Boykin v. State*, 818 S.W.2d 782 (Tex. Crim. App. 1991). . . . . . . . . . . . . . . . . . . . 2

*Chapin v. State*, 296 S.W. 1095 (Tex. Crim. App. 1927). . . . . . . . . . . . . . . . . . . . . 4

*Chavez v. State*, 9 S.W. 3d 817 (Tex. Crim. App. 2000). . . . . . . . . . . . . . . . . . 5, 8

*Craft v. State*, 295 S.W. 617 (Tex. Crim. App. 1927). . . . . . . . . . . . . . . . . . . . . . 4

*State v. Daugherty*, 931 S.W.2d 268 (Tex. Crim. App. 1996). . . . . . . . . . 2, 5-6, 10

*Davis v. United States*, 131 S. Ct. 2419 (2011). . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Fuller v. State,* 829 S.W.2d 191 (Tex. Crim. App. 1992). . . . . . . . . . . . . . . . . . . . . 7

*Garcia v. State*, 829 S.W.2d 796 (Tex. Crim. App. 1992). . . . . . . . . . . . . . 2, 10-11

*Gonzales v. State*, 67 S.W.3d 910 (Tex. Crim. App. 2002). . . . . . . . . . . . . . . . . . . 7

*Hamal v. State*, 390 S.W.3d 302 (Tex. Crim. App. 2012). . . . . . . . . . . . . . . . . . . . 5

*State v. Johnson*, 939 S.W.2d 586 (Tex. Crim. App. 1996). . . . . . . . . . . . . . . . . . . 7

*Karnev v. State*, 281 S.W.3d 428 (Tex. Crim. App. 2009). . . . . . . . . . . . . . . . . . . 8

*United States v. Leon*, 468 U.S. 897 (1984). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Madden v. State*, 242 S.W.3d 504, 511 (Tex. Crim. App. 2007). . . . . . . . . . . . . . . 5

*Mapp v. Ohio*, 367 U.S. 643 (1961). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*State v. Mazuca*, 375 S.W.3d 294 (Tex. Crim. App. 2012). . . . . . . . . . . . . . . . . . . 6

*Miles v. State*, 241 S.W.3d 28 (Tex. Crim. App. 2007). . . . . . . . . . . . . . . . . . . . . . 2

*Polk v. State*, 704 S.W.2d 929 (Tex. App.–Dallas 1986), *aff'd on other grounds*, 738 S.W.2d 274 (Tex. Crim. App. 1987).. . . . . . . . . . . . . 10

*Weeks v. United States*, 232 U.S. 383 (1914). . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Welchek v. State*, 247 S.W. 524 (Tex. Crim. App. 1922) (orig. op.). . . . . . . . . . . 3

*Wilson v. State*, 311 S.W. 3d 452 (Tex. Crim. App. 2010).. . . . . . . . . . . . . . . . . . 7

*Wolf v. Colorado*, 338 U.S. 25 (1949). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

**Statutes**
TEX. CODE CRIM. PROC. art. 22.13(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

TEX. CODE CRIM. PROC. art. 38.23. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

**Other**
S.B. 115, 1925 Tex. Gen. Laws, ch. 49.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

40 G. Dix & J. Schmolensky, Texas Practice Series: Criminal Practice and Procedure §7:25 (3d ed. 2011).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

No. PD-0077-15

IN THE COURT OF CRIMINAL APPEALS

OF THE STATE OF TEXAS

STEVEN COLE,                                                        Appellant

v.

THE STATE OF TEXAS,                                          Appellee

\* \* \* \* \*

**STATE'S SUPPLEMENTAL BRIEF**

\* \* \* \* \*

TO THE HONORABLE COURT OF CRIMINAL APPEALS:

The State Prosecuting Attorney respectfully presents its supplemental brief.

## ARGUMENT

The fourth issue granted in this case addresses whether a remedy lies for blood-draws performed pursuant to a statute that, at the time, was deemed by this Court to codify a recognized warrant exception. The ultimate issue is whether article 38.23(a) provides an exception for good faith reliance on a statute or case law notwithstanding article 38.23(b), which specifically provides an exception for good faith reliance on a warrant issued by a neutral magistrate based on probable cause.

1

This Court typically adheres to the plain language of a statute unless it is ambiguous or would lead to absurd results.[1] Article 38.23(b) can be read to imply that there are no other exceptions, as this Court did in *Garcia v. State* and *Daugherty v. State*.[2] Since then, however, this Court has recognized that, "The plain language of Article 38.23, like that of the Fourth Amendment to the United States Constitution, appears to be relatively straightforward[,]" but "is considerably more complex in application than its simple words suggest."[3] Subsequent interpretation of article 38.23 shows increased reliance on its history and purpose. This Court's interpretation of article 38.23(b) is now an anomaly and should be reconsidered.

A brief history of the exclusionary rule

Although the Fourth Amendment was ratified in 1791, the exclusionary remedy was not created until 1914.[4] At that time, neither the Fourth Amendment nor its exclusionary rule were binding on the states.[5] Many states, like Texas, determined

---

[1]    *Boykin v. State*, 818 S.W.2d 782, 785-86 (Tex. Crim. App. 1991).

[2]    *Garcia v. State*, 829 S.W.2d 796, 799 n.2 (Tex. Crim. App. 1992) (plurality) (calling article 38.23(b) "its sole exception"); *State v. Daugherty*, 931 S.W.2d 268, 270 (Tex. Crim. App. 1996) ("[W]here a statute contains an express exception, its terms must apply in all cases not excepted.").

[3]    *Miles v. State*, 241 S.W.3d 28, 32 (Tex. Crim. App. 2007).

[4]    *Weeks v. United States*, 232 U.S. 383, 398 (1914).

[5]    *Id*. In *Wolf v. Colorado*, 338 U.S. 25 (1949), the Supreme Court held that the Fourteenth Amendment did not incorporate the first eight amendments, calling the matter

that public policy favored not excluding evidence obtained without a warrant. In

*Welchek v. State*, this Court held:

> To reject such evidence for such reason or to completely return same to the
> owner and relinquish jurisdiction over same, would in nowise be a punishment
> to the officer but would rather be a hurt inflicted upon the people whose interest
> in the punishment of crime suffers because the court may think the officer
> should be rebuked for the manner in which he obtained the evidence.[6]

The suspect whose property was wrongfully obtained was entitled to his day in court,

but not until that property had played its role in "aid[ing] the court in arriving at a

correct conclusion in a criminal case[.]"[7]

The Legislature disagreed. In 1925, it created article 727a, the predecessor to

article 38.23. Its language was just as plain: "No evidence obtained by an officer or

other person in violation of any provision of the Constitution or laws of the State of

Texas, or of the United States of America, shall be admitted in evidence against the

accused on the trial of any criminal case."[8] This Court quickly recognized that article

---

"closed." *Id*. at 26. It left the mechanism for enforcing "[t]he security of one's privacy against
arbitrary intrusion by the police" to the states. *Id*. at 27, 33. It was not until over a decade later
that the Court held, "Since the Fourth Amendment's right of privacy has been declared
enforceable against the States through the Due Process Clause of the Fourteenth, it is enforceable
against them by the same sanction of exclusion as is used against the Federal Government."
*Mapp v. Ohio*, 367 U.S. 643, 655 (1961).

[6]     247 S.W. 524, 529 (Tex. Crim. App. 1922) (orig. op.).

[7]     *Id*. at 528-29.

[8]     S.B. 115, 1925 Tex. Gen. Laws, ch. 49, 186-87. It was referred to as 787a
throughout the process.

3

727a "intended and did have the effect to change the rule adopted by this court in [*Welchek*]."[9]  "[I]t is believed the courts of this state by such enactment were required to make the same application of the principle involved as had theretofore been made by the Supreme Court of the United States, and by the courts of other jurisdictions in excluding evidence obtained in violation of the constitutional provisions."[10]  "Thus, by implication, the Legislature sanctioned the construction by the Federal courts of the search and seizure clause of the Constitution."[11]

The Legislature's intent for Texas exclusionary law to follow federal search and seizure law is at the core of article 38.23.  If the Supreme Court would not apply the exclusionary rule in a given situation, it can only be because the purpose of the exclusionary rule would not be served.[12]  And if "it is virtually irrefutable that the Texas Legislature enacted 727a, which is materially identical to today's article 38.23[(a)], in order to provide Texas citizens with the protections of the Fourth

---

[9]   *Craft v. State*, 295 S.W. 617, 618 (Tex. Crim. App. 1927) (op. on r'hng).

[10]   *Craft v. State*, 295 S.W. 617, 618 (Tex. Crim. App. 1927) (orig. op.).

[11]   *Chapin v. State*, 296 S.W. 1095, 1100 (Tex. Crim. App. 1927).

[12]   *See Davis v. United States*, 131 S. Ct. 2419, 2426-27 (2011) ("The rule's sole purpose, we have repeatedly held, is to deter future Fourth Amendment violations.  Our cases have thus limited the rule's operation to situations in which this purpose is 'thought most efficaciously served.'  Where suppression fails to yield 'appreciable deterrence,' exclusion is 'clearly . . . unwarranted.'") (citations omitted) (alterations in original).

4

Amendment's exclusionary rule[,]"[13] it makes sense that its limitations were also intended to apply.

## The plain language of article 38.23 has been interpreted to better serve its intended purpose.

Almost no operative word in article 38.23(a) is interpreted according to its plain meaning.[14] The basic rule is:

> No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case.[15]

The first departure from plain meaning comes just three words in. As this Court acknowledged, "there is a point beyond which the ordinary understanding of 'obtained' just does not apply."[16] As such, "Article 38.23(a) *could* be viewed as

---

[13] *Chavez v. State*, 9 S.W.3d 817, 822 (Tex. Crim. App. 2000) (Price, J., concurring).

[14] While only the first part of subsection (a), the basic rule, is directly relevant, the "jury instruction" portion of subsection (a) is also not interpreted as it is written. The statute plainly states that the jury shall decide whether "it believes, or has a reasonable doubt, that the evidence was obtained in violation of the provisions of this Article" "[i]n any case where the legal evidence raises an issue hereunder[.]" But juries cannot be asked to determine whether article 38.23 was violated because, as this Court has made clear, juries are not qualified to decide legal matters. *Madden v. State*, 242 S.W.3d 504, 511, 513 (Tex. Crim. App. 2007). Moreover, the factual issues they are permitted to decide are limited to those that were affirmatively contested and dispositive. *Hamal v. State*, 390 S.W.3d 302, 306 (Tex. Crim. App. 2012). This interpretation makes the statute work, but is not at all apparent from its plain language.

[15] Tex. Code Crim. Proc. art. 38.23(a).

[16] *Daugherty*, 931 S.W.2d at 270.

rejecting a strict 'but/for' test for causation . . . because the ordinary meaning of 'obtained' does not extend to . . . a remote, or 'attenuated,' causal relationship."[17] At the same time that it utilized Fourth Amendment "attenuation" language, the Court maintained—almost defiantly—that "[t]his construction is based on the express language of Article 38.23, not on blind obedience to United States Supreme Court decisions."[18] It refused to apply the "legal fiction" of inevitable discovery simply "because the United States Supreme Court has adopted this fiction for purposes of its own court-made exclusionary rule."[19]

The problem is that this Court's "obtained" cases depend almost entirely on so-called legal fictions in the form of recognized exceptions to factual causal chains.[20] As pointed out by the dissent in *Daugherty*, "The resolution of whether the remedy in Article 38.23(a) applies turns *purely* on a question of federal constitutional law."[21]

---

[17]     *Id*. (emphasis added).

[18]     *Id*.; *see also id.* at 271 (criticizing the dissent's "uncritical adherence to decisions of the United States Supreme Court.").

[19]     *Id.* at 269.

[20]     This area of law extends far beyond what ordinary people would consider attenuated. Consider *State v. Mazuca*, 375 S.W.3d 294 (Tex. Crim. App. 2012), in which a valid outstanding warrant that was discovered after an illegal traffic stop served to legally sever the link between the illegality and the drugs obtained. This Court's application of Fourth Amendment case law was undoubtedly correct because no purpose would be served by exclusion but, respectfully, a layperson might not agree that the drugs were not obtained by the stop.

[21]     *Daugherty*, 931 S.W.2d at 275 (McCormick, P.J., dissenting).

6

It is difficult to explain otherwise.

Similarly, "in violation of any provisions . . . or laws," which modifies "obtained," does not mean what it says. "Although the plain language of article 38.23(a) would suggest that evidence obtained in violation of *any* law must be suppressed, . . . article 38.23(a) may not be invoked for statutory violations unrelated to the purpose of the exclusionary rule."[22] "The underlying purpose of both the federal exclusionary rule and article 38.23 is the same: to protect a *suspect*'s privacy, property, and liberty rights against overzealous law enforcement."[23] Although written after *Boykin*, the Court did not purport to call a plain reading ambiguous or absurd. Instead, it referred exclusively to the original legislative intent of the statute and interpreted article 38.23(a) accordingly.[24]

---

[22] *Wilson v. State*, 311 S.W.3d 452, 459 (Tex. Crim. App. 2010) (orig. op.) (emphasis in original).

[23] *Id.* at 458-59 (emphasis added); *see also Fuller v. State*, 829 S.W.2d 191, 202 (Tex. Crim. App. 1992) (despite "the sweeping language of article 38.23" and the fact that it "might be read in such a way," article 38.23 only applies when the defendant's rights are violated).

[24] *See also Fuller*, 829 S.W.2d at 202 ("we are simply unwilling, by statutory interpretation, to work such a fundamental change in this State's elemental law of standing without a rather more explicit indication of legislative intent."). In fact, this Court has said when determining the meaning of "other person" that "there is nothing logically absurd about art. 38.23." *State v. Johnson*, 939 S.W.2d 586, 588 (Tex. Crim. App. 1996) ("One need only turn to a dictionary of the English language . . . ."). Judge Price and Presiding Judge Keller have explicitly stated the opposite, at least when it comes to the scope of violations covered. *See Gonzales v. State*, 67 S.W.3d 910, 915 (Tex. Crim. App. 2002) (Keller, P.J., dissenting) ("To expand the breadth of 38.23 to any and every violation of Texas 'law' - beyond those that affect a

In light of this Court's approach to interpreting subsection (a), it is fair to ask whether subsection (b) is as plain as this Court implied in *Garcia* and *Daugherty*. Both the intent of the statute as a whole and the history of subsection (b) suggest it is not.

Article 38.23(b) was never intended to preclude consideration of other forms of good faith.

On a blank slate, it would be relatively easy to show that good faith reliance on a previously approved statute or case law should prevent exclusion. If, for all intents and purposes, the officer followed the law in effect at the time, he could not have "obtained" evidence in violation of it. And both the blood-draw statute and the exigency of dissipation were recognized by this Court at the time of the offense.[25]

---

defendant's privacy or property interests - is to ignore the basic premise under which the statute was created and would lead to absurd results.") (quoting *Chavez*, 9 S.W.3d at 822-23 (Price, J., concurring)). *See also* 40 G. Dix & J. Schmolensky, Texas Practice Series: Criminal Practice and Procedure §7:25 (3d ed. 2011) (p. 321):

> *Roy* [*v. State*, 608 S.W.2d 645 (Tex. Crim. App. 1980) (panel)] and other cases taking similar approaches are difficult to reconcile with the literal language of Article 38.23. Yet, given the number and nature of statutory requirements that might be violated in acquisition of evidence, reading the statute as applicable without qualification to all "laws" is arguably so absurd that it cannot reflect legislative intention.

[25] *Beeman v. State*, 86 S.W.3d 613, 615-16 (Tex. Crim. App. 2002) ("The implied consent law expands on the State's search capabilities by providing a framework for drawing DWI suspects' blood in the absence of a search warrant. It gives officers an additional weapon in their investigative arsenal, enabling them to draw blood in certain limited circumstances even without a search warrant."); *Karnev v. State*, 281 S.W.3d 428, 434 (Tex. Crim. App. 2009) ("Statutes are presumed to be constitutional until it is determined otherwise."); *Aliff v. State*, 627 S.W.2d 166, 169-70 (Tex. Crim. App. 1982) (upholding the warrantless blood draw from a DWI suspect when there was probable cause to arrest, the draw was "unintrusive," and blood is

Unfortunately, this Court's consideration of these aspects of the good faith exception was unintentionally prevented by passage of article 38.23(b).

Article 38.23(b) says, "It is an exception to the provisions of Subsection (a) of this Article that the evidence was obtained by a law enforcement officer acting in objective good faith reliance upon a warrant issued by a neutral magistrate based on probable cause." As shown above, the current interpretation runs contrary to the Legislature's desire to provide Texans the same exclusionary protection afforded defendants under federal law. Moreover, it does not serve this Court's interpretation of "obtained." It is thus unclear whether article 38.23(b) was intended to 1) limit good faith reliance to warrants only, or 2) limit good faith reliance on warrants to those issued by neutral magistrates based on probable cause, thus breaking with the Supreme Court's then-recent decision in *United States v. Leon*.[26]

Resort to legislative history shows that article 38.23(b) was intended as a specific response to specific developments in the law. As the attached Senate Bill Analysis says, the impetus for the bill was "[c]ases [that] have arisen in which evidence has been ruled inadmissible against a defendant due to technical defects in

"quickly consumed" and "would be lost forever").

[26]     468 U.S. 897, 915-16 (1984) (holding, *inter alia*, that exclusion of evidence secured by a warrant that is ultimately held not to be based on probable cause would advance no Fourth Amendment interest).

9

the search warrant or similar technical errors in the manner in which the evidence was obtained."[27]  It also noted that the Supreme Court had recently provided for a "good faith" exception.  By requiring probable cause and judicial review, the legislature tailored the proposed statute to address the specific problem at hand: hyper-technical review of warrants.  This serves to limit reliance on warrants not based on probable cause, but it was not meant to limit good faith reliance on anything else.

Numerous judges recognized this to be the case when *Garcia* and *Daugherty* were decided.  "The reader might find it ironic that this legislative 'exception' to Article 38.23 came about as a result of another erroneous interpretation of Article 38.23 by this Court."[28]  "The addition of Subsection (b) of Article 38.23 can be seen as an attempt by the Texas Legislature to both correct past rulings of this Court and to bring our State in line with the holding in *United States v. Leon . . . .*"[29]  "Thus, the addition of the specific exception was not, as the majority believes, intended to be the

---

[27]    *See, e.g.*, *Polk v. State*, 704 S.W.2d 929, 934 (Tex. App.–Dallas 1986), *aff'd on other grounds*, 738 S.W.2d 274 (Tex. Crim. App. 1987) ("By its argument, the State would have us graft upon a statutory exclusionary rule the good faith exception to a judicially created exclusionary rule enunciated in *Leon*. We are unwilling to do so. . . . This court must defer to the express dictates of the Legislature and arguments urging that in certain situations the exclusionary rule should not be applied must, in Texas, be directed to the Legislature.").

[28]    *Daugherty*, 931 S.W.2d at 275 n.1 (McCormick, PJ, concurring and dissenting, joined by White and Keller, JJ.) (citations omitted).

[29]    *Garcia*, 829 S.W.2d at 803 n.1 (Miller, J., concurring, joined by Campbell, J.).

10

exclusive departure from the rule, but rather is intended as a clarification adding and acknowledging a provision where this Court had historically failed to do so."[30] "The language used implies that other exceptions to the Article exist; it states only that 'good faith' is one of those exceptions."[31]

Conclusion

Like nearly all aspects of article 38.23, the meaning of "*an* exception"—one of many or, by implication, the only one—must be determined based on the original intent of the statute. *Garcia* and *Daugherty* were decided before this Court began interpreting article 38.23(a) in the way that best satisfies the purpose and history of the statutory scheme as a whole. The best way to ensure that only evidence obtained in violation of the law is excluded is to refuse to apply article 38.23 when an officer or other person follows the approved law in effect at the time.

---

[30]     *Id.* (citations omitted).

[31]     *Id*. This is certainly not an unheard-of interpretation. In TEX. CODE CRIM. PROC. art. 22.13(a), for example, the legislature specified that "[t]he following causes, *and no other*, will exonerate the defendant and his sureties, if any, from liability upon forfeiture taken."

## PRAYER FOR RELIEF

WHEREFORE, the State of Texas prays that this Court reverse the decision of the Court of Appeals.

Respectfully submitted,

   /s/ John R. Messinger
JOHN R. MESSINGER
Assistant State Prosecuting Attorney
Bar I.D. No. 24053705

P.O. Box 13046
Austin, Texas 78711
information@spa.texas.gov
512/463-1660 (Telephone)
512/463-5724 (Fax)

## CERTIFICATE OF COMPLIANCE

I certify that, according to the WordPerfect word count tool, this document contain 3,586 words.

/s/ John R. Messinger
John R. Messinger
Assistant State Prosecuting Attorney

## CERTIFICATE OF SERVICE

I certify that on this 10th day of September, 2015, the State's supplemental brief was served via certified electronic service provider to:

Zan Colson Brown
Assistant District Attorney
101 East Methvin, Suite 333
Longview, Texas, 75601
zan.brown@co.gregg.tx.us

Ebb Mobley
P.O. Box 2309
Longview, Texas 75606
ebbmob@aol.com

/s/ John R. Messinger
John R. Messinger
Assistant State Prosecuting Attorney

# BILL ANALYSIS

## BACKGROUND:

Currently, under Article 38.23, Code of Criminal Procedure, no evidence obtained by an officer or other person in violation of any provisions of the constitution or laws of the State of Texas, or of the constitution or laws of the United States, shall be admitted in evidence against the accused on the trial of any criminal case. In addition, Article 38.23 allows the jury to decide if the evidence seized was done so in violation of any of the laws cited above.

Cases have arisen in which evidence has been ruled inadmissible against a defendant due to technical defects in the search warrant or similar technical errors in the manner in which the evidence was obtained. Often, the officer or other official acted in "good faith" while obtaining the evidence. The U.S. Supreme Court has ruled that evidence obtained in "good faith" is admissible as an exception to the "exclusionary rule." Presently, Article 38.23 does not parellel this exception.

## PURPOSE:

As proposed, S.B. 1 provides that evidence seized in violation of the U.S. Constitution, as interpreted by the U.S. Supreme Court, or evidence specifically inadmissible under the Texas Constitution or Texas law, is admissible if the evidence was obtained in good faith upon a warrant based on probable cause.

## RULEMAKING AUTHORITY:

It is the committee's opinion that this bill does not grant any additional rulemaking authority to a state officer, institution, or agency.

## SECTION BY SECTION ANALYSIS:

SECTION 1. Amends Article 38.23, Code of Criminal Procedure, by adding Subsection (c), which makes evidence obtained in violation of the U.S. Constitution, or in violation of the Texas Constitution or Texas laws, admissable if such evidence was obtained in good faith and the warrant issued was based on probable cause.

SECTION 2. Makes application of this Act prospective.

SECTION 3. Effective date. September 1, 1987.

SECTION 4. Emergency clause.