NO. 07-03-0405-CV



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL A



OCTOBER 29, 2004



______________________________




THE STATE OF TEXAS, APPELLANT



V.


 

BRADLEY A. McALLISTER, APPELLEE



 

_________________________________



FROM THE 47TH DISTRICT COURT OF RANDALL COUNTY;



NO. 46,899-A; HONORABLE DAVID L. GLEASON, JUDGE



_______________________________




Before JOHNSON, C.J., and REAVIS and CAMPBELL, JJ.



MEMORANDUM OPINION



 The State of Texas, appellant, acting by and through the Texas Department of
Transportation (TxDOT) appeals from a judgment based on a jury verdict that it take
nothing against appellee Bradley A. McAllister on its claim for subrogation pursuant to
chapter 417 of the Texas Labor Code Annotated (Vernon 1996), for workers' compensation
and other benefits paid for the death of Paris Hood, a TxDOT employee, and that McAllister
recover on his counterclaim against the State of Texas, the sum of $7,560 for property
damage and $50,000 for physical pain and mental anguish, plus interest and costs. (1) 
Presenting two issues, TxDOT contends (1) the Texas Tort Claims Act (2) does not clearly
and unambiguously waive its sovereign immunity for McAllister's claim. By four sub-issues,
TxDOT contends (A) McAllister's injuries were not caused by the "use" or "operation" of a
State motor vehicle; (B) McAllister's claim is barred because he failed to give notice within
six months; (C) it did not waive sovereign immunity because Hood's decisions were
protected by official immunity; and (D) the Act does not permit McAllister to recover
property damage for an injury he did not suffer. By its second issue, TxDOT contends the
jury's conclusion that McAllister was not negligent was against the overwhelming weight
of the evidence. We reverse and render in part and affirm in part.

 During the afternoon hours of February 27, 1998, Hood, while in the course of his
employment, was picking up trash along Interstate Highway 27. His TxDOT truck was
parked facing north on the shoulder very near the white fog line and the flashing caution
lights were in operation. After placing trash in the truck, Hood walked to the left side of the
truck and while he was standing on the paved portion of the highway, was struck by a truck
driven by McAllister, who was traveling north in the right lane. Hood sustained fatal injuries. 

 According to witnesses who were also traveling north behind McAllister, McAllister
was in the right lane with an adjacent vehicle also driving north in the left lane which
prevented him from changing lanes. The evidence established that McAllister was not
speeding. A Department of Public Safety Officer who was called to the scene of the
accident to investigate concluded that because Hood had walked into the lane of travel
McAllister was not at fault. 

 TxDOT filed suit against McAllister to recover for benefits paid on behalf of Hood in
the discharge of its responsibilities under workers' compensation laws. McAllister filed a
counterclaim for property damage to the truck he was driving and for personal injuries and
mental anguish. In response to the counterclaim, TxDOT plead, among other items, the
defense of sovereign immunity under the Act. 

 In response to question number one, the jury found that Hood's negligence
proximately caused the accident and attributed no fault to McAllister. Also, by its answers
to questions four and five, the jury awarded McAllister $11,000 (which was reduced in the
judgment to $7,650 because the evidence would only support that amount) for property
damage to the truck driven by him and $50,000 for his physical pain and mental anguish. 
After the State's motion to disregard the jury's findings and for judgment notwithstanding
the verdict was denied, judgment was rendered on the jury's verdict. TxDOT's motion to
set aside the jury's verdict and for new trial was overruled by the trial court. 

 Briefly restated, TxDOT contends McAllister's claim fell outside the Act because his
injuries were not caused by TxDOT's vehicle, he did not give notice of his claim within six
months as required by the Act, it did not waive sovereign immunity, Hood's decisions were
protected by official immunity, and McAllister could not recover for property damage under
the Act. Considering these issues together, we agree.

 These contentions focus on the applicability of the Act and whether McAllister's
claims were caused by an actionable "use" or "operation" of a motor vehicle owned by the
State. Before addressing these issues, we first consider McAllister's contention that
TxDOT waived its affirmative defense of sovereign immunity and is now estopped from
raising it on appeal. In response to McAllister's counterclaim and in addition to a general
denial, the State alleged:

Sovereign Immunity


 Plaintiff/Counter-Defendant State has full sovereign immunity both from suit
and from liability, save only to the extent of the partial waiver of same given
by the Texas Tort Claims Act, (Civil Practice and Remedies Code, Chapter
101), and it hereby pleads and asserts its claim to and defense of sovereign
immunity.


 Ultimately, the purpose of pleadings is to give the adversary notice of the claims and
defenses, as well as notice of the relief sought. Horizon/CMS Healthcare Corporation v.
Auld, 34 S.W.3d 887, 897 (Tex. 2000); Perez v. Briercroft Serv. Corp., 809 S.W.2d 216,
218 (Tex. 1991). Immunity from liability is an affirmative defense that must be plead or it
is waived. Texas Department of Transp. v. Jones, 8 S.W.3d 636, 638 (Tex. 1999); see
also Tex. R. Civ. P. 94. In the absence of a special exception to an opponent's pleadings,
courts should construe the pleadings liberally in favor of the pleader. Boyles v. Kerr, 855
S.W.2d 593, 601 (Tex. 1993); see also Tex. R. Civ. P. 91. McAllister did not specially
except to TxDOT's answer nor its special exception filed in response to his counterclaim;
thus, the State did not waive sovereign immunity from liability. 

Operation or Use


 Under section 101.021(1)(A) of the Act, TxDOT is liable to McAllister for his
damages if they were proximately caused by Hood's wrongful act or omission or negligence
and if they arose from the operation or use of the TxDOT truck. Although the terms
operation and use are not defined in the Act, in LeLeaux v. Hamshire-Fannett School Dist.,
835 S.W.2d 49, 51 (Tex. 1992), the Court defined "operation" as the "doing or performing
of practical work," and "use" to mean "to put or bring into action or service; to employ for
or apply to a given purpose." 

 For sovereign immunity to be waived, the Act requires a nexus between the
operation or use of the motor vehicle and the plaintiff's injuries. See Dallas Area Rapid
Transit v. Whitley, 104 S.W.3d 540, 543 (Tex. 2003), citing Tx. Nat. Res. Con. Com'n v.
White, 46 S.W.3d 864, 868 (Tex. 2001). The motor vehicle's use must have actually
caused the injury. White, 46 S.W.3d at 869. The operation or use of a motor vehicle does
not cause the injury if it does no more than furnish the condition that makes the injury
possible. Dallas Co. Mental Health & Mental Retardation v. Bossley, 968 S.W.2d 339, 343
(Tex. 1998). In other words, if the vehicle is only the setting for the injury, immunity for
liability is not waived. LeLeaux, 835 S.W.2d at 52; see generally City of Kemah v. Vela, No.
14-03-01091-CV, 2004 WL 1925959, at *4 (Tex.App.-Houston [14th Dist.] Aug. 31, 2004,
no pet. h.) (holding that sovereign immunity was not waived when an improperly parked
police car in which plaintiff was injured when it was struck by another vehicle was not in use
or operation but was only the setting for the injury).

 TxDOT argues that its truck was not in use or operation at the time of the accident,
while McAllister contends that Hood parked the truck so close to the main traveled portion
of the highway that it created an extremely dangerous situation. We agree with TxDOT. 
The evidence established that TxDOT's truck did not come into contact with the vehicle
McAllister was driving and thus, no nexus was shown between it and McAllister's injuries. 
Rather, his injuries were the result of Hood's misjudgment in standing on the highway. Just
as in Vela, the TxDOT truck did no more than furnish the condition that made McAllister's
injuries possible when he struck Hood and no liability on the part of TxDOT was proven
under section 101.021 of the Act. 




Notice


 Under the Act a governmental unit is entitled to receive formal, written notice of a
claim against it within six months of the incident specifying the damage or injury claimed,
the time and place of the incident, and the incident. § 101.101(a). The language of sub-paragraph (a) is mandatory. See University of Texas Southwestern Medical Center at
Dallas v. Loutzenhiser, 140 S.W.3d 351, 359 (Tex. 2004). Under section 101.101(c), the
requirement of sub-paragraph (a) is inapplicable if the governmental unit had actual notice
and knowledge that its fault produced or contributed to the claimed injury. Loutzenhiser,
140 S.W.3d at 358; Texas Dept. of Criminal Justice v. Simons, 140 S.W.3d 338, 339 (Tex.
2004), citing Cathey v. Booth, 900 S.W.2d 339, 341 (Tex. 1995) (per curiam). A
governmental unit does not acquire actual notice merely by conducting an investigation;
it must have actual, subjective awareness of its fault in the incident. Simons, 140 S.W.3d
at 348. The purpose of the notice requirement is to ensure prompt reporting of claims in
order to enable a governmental unit to gather information necessary to guard against
unfounded claims, settle claims, and prepare for trial. Cathey, 900 S.W.2d at 340.

 The accident occurred on February 27, 1998. McAllister references a portion of the
clerk's record designated "Notice-Correspondence" in support of his contention that TxDOT
had been given notice. All but one of the letters reference the property damage claim by
Rob Smets and Carla Smets, as insured and owners of the truck McAllister was driving at
the time of the accident. On August 4, 1998, McAllister's attorney wrote an Assistant
Attorney General generally complaining about the "screening process" in deciding to
prosecute a subrogation claim against McAllister to recoup benefits paid on behalf of Hood. 
Counsel continued in the letter:

 Brad McAllister is a fine, decent young man. Like any normal person who
cares for people, a tragedy of this kind has seriously affected him personally,
mentally and emotionally. He truly needs to get this behind him, and not be
forced to relive through the drama of the courtroom the details of this event,
and the anguish he will go through from this point up to the time of trial. 


No mention is made in the August 4 letter of a claimed injury by McAllister, the time and
place of the incident, or the incident that gave rise to the claim as required by section
101.101(a). Further, although TxDOT had investigated the accident, there is no evidence
in the record indicating it had actual notice of McAllister's claim or that its fault produced
or contributed to the claimed injury. Thus, we conclude that McAllister's failure to comply
with the notice requirements barred any action under the Act. Loutzenhiser, 140 S.W.3d
at 365. 

Hood's Official Immunity


 TxDOT argues that it was protected from liability because Hood's decisions fell
under the doctrine of official immunity. McAllister contends official immunity does not apply. 
Official immunity shields government employees and public officials from suits arising from
performance of their (1) discretionary duties (2) in good faith (3) within the scope of their
authority. See Ballantyne v. Champion Builders, Inc., 47 Tex. Sup. Ct. J. 852, 2004 WL
1533950, at *5 (Tex. July 9, 2004). However, a claimant's failure to give notice under
section 101.101 precludes the waiver of official immunity. Johnson v. Nacogdoches County
Hosp. Dist., 109 S.W.3d 532, 537 (Tex.App.-Tyler 2001, pet. denied). Having previously
concluded that McAllister did not provide formal, written notice of his claim nor establish
that TxDOT had actual notice, we need not address whether Hood was entitled to official
immunity. We agree with TxDOT that McAllister's claim fell outside the Act and sustain its
first issue and four sub-issues.

 McAllister's Non-Negligence


 By its second issue, TxDOT contends the jury's verdict that McAllister was zero
percent responsible for the accident was against the overwhelming weight of the evidence. 
We disagree. The mere occurrence of an accident does not present evidence of
negligence. Gomez v. Adame, 940 S.W.2d 249, 251 (Tex.App.--San Antonio 1997, no
writ); Weaver v. U.S. Testing Co., Inc., 886 S.W.2d 488, 490 (Tex.App.--Houston [1st Dist.]
1994, writ denied). The State was required to prove specific acts of negligence by
McAllister that proximately caused the accident. 

 In Dow Chemical Co. v. Francis, 46 S.W.3d 237, 241-42 (Tex. 2001), the Court
discussed the appropriate standard of review of an issue on which the party attacking an
adverse finding had the burden of proof. In summary the Court held:

 [w]hen a factual sufficiency challenge is presented, the complaining party
must demonstrate that the adverse finding is against the great weight and
preponderance of the evidence. Under this review, after considering and
weighing all the evidence, we can set aside the verdict only if the evidence
is so weak or if the finding is so against the great weight and preponderance
of the evidence that it is clearly wrong and unjust. 


See also Pool v. Ford Motor Co., 715 S.W.2d 629, 635 (Tex. 1986); Raw Hide Oil & Gas
v. Maxus Exploration, 766 S.W.2d 264, 266 (Tex.App.--Amarillo 1988, writ denied); Hall,
Standards of Review in Texas, 34 St. Mary's L.J. 173-74. 

 According to the uncontradicted evidence of eye witnesses, while McAllister was
driving in the right lane of traffic below the speed limit, another vehicle was driving in the
same direction in the left lane making it impossible for him to change lanes. The TxDOT
truck was parked on the shoulder near the fog line when Hood walked into the right lane
of traffic. One particular witness, a coach from a nearby community, testified:

 [w]e were fixing to create or coming upon creating what I call a tight
formation.

Moreover, McAllister was not speeding nor was he cited for any traffic violations. The DPS
officer who conducted the investigation concluded he was not at fault. Thus, the evidence
presented showed that McAllister was driving at a lawful rate of speed, in his lane of traffic
and unable to change lanes when Hood walked into his lane. Having reviewed all the
evidence, we conclude the jury's finding of zero negligence on McAllister's part is not so
against the great weight and preponderance of the evidence as to be clearly wrong and
unjust. Issue two is overruled.

 Accordingly, that portion of the trial court's judgment awarding Bradley A. McAllister
$7,560, plus prejudgment interest in the amount of $3,213 for property damages, and
$50,000, plus prejudgment interest in the amount of $21,250 for physical pain and mental
anguish, is reversed and judgment is hereby rendered that Bradley A. McAllister take
nothing against the State of Texas acting by and through the Texas Department of
Transportation; in all other respects, the judgment is affirmed.

 Don H. Reavis

 Justice




 


1. The truck driven by McAllister was owned by a third party. By his counterclaim,
McAllister sought recovery of the property damage for the use and benefit of the third party.
2. Tex. Civ. Prac. & Rem. Code Ann. §§ 101.001 - 101.109 (Vernon 1997 & Pamph.
Supp. 2004-05), hereafter referred to as the Act.


admissibility. Montgomery, 810 S.W.2d at 389. 
The evidence of the guns and knife was so closely connected with the events of the arrest
that it was admissible to aid the jury in understanding the circumstances of the charged
crime. The evidence was "same transaction" evidence in nature, and the trial court did not
abuse its discretion in determining that the probative value of the evidence exceeded its
prejudicial effect. Accordingly, we overrule appellant's fourth and fifth issues.

IV. JURY ARGUMENT

 In his sixth issue, appellant contends that the trial court erred in denying his request
for a mistrial because the State made a jury argument outside the record during the guilt
or innocence stage of trial:

 Prosecutor: Now, if you're out to sell drugs, just like selling anything else. 
You're going to sell shirts. You've got to have some smalls. 
You've got to have some larges. Well, what do you have
here? We've got some smalls. We've got some larges. 
These are exactly what Dale Gregg sees all the time in years
of experience about drug trafficking in Lubbock, exactly right
there.

 Ladies and gentlemen of the jury, these witnesses know
exactly what they're talking about. It wasn't Dale Gregg's
thought that maybe this man had the intent to deliver. He was
sure, no doubt, somebody that does this is out to deliver
drugs.

 Defense: Your Honor, I'm going to object. Officer Gregg never said that
this defendant, his opinion, had the intent to deliver.


The trial court sustained the objection and instructed the jury to disregard the comment. 
Appellant's request for a mistrial was denied.

 Jury arguments must fall into one of four general areas: 1) summation of the
evidence, 2) reasonable deduction from the evidence, 3) answer to the argument of
opposing counsel, and 4) plea for law enforcement. Walker v. State, 664 S.W.2d 338, 340
(Tex.Crim.App. 1984); Alejandro v. State, 493 S.W.2d 230, 231 (Tex.Crim.App. 1973). It
is improper for a prosecutor to call upon the jury to speculate as to activities of the accused
that are not shown nor inferable from the evidence. Walker, 664 S.W.2d at 340.

 Although the State's expert did not expressly state that he had "no doubt" regarding
appellant's intent to deliver cocaine, the record reflects a portion of his testimony as
follows:

 Q: If--for example, let's say somebody had in their possession over
seven grams of cocaine packaged as you've seen in State's Exhibits
5 and 6, would you believe that person has that for personal use?

 A: No.

 Q: In your opinion, why would someone have drugs in that amount
packaged that way?

 A: To resell.

***

 Q: Are those particular sizes of packaging, is that common sizing for
drug dealing in Lubbock, Texas?

 A: Sure. Yes.

 Q: Now, are--is it common to deal cocaine and package it using the
corners of plastic baggies?

 A: Yes.


 When considering the entire record, it is not unreasonable to infer that the expert
believed appellant possessed the cocaine with the intent to deliver; therefore, the
argument was not improper. Even if we assume that the argument was improper, however,
the argument is not so inflammatory as to be incurable. The trial court's instruction to the
jury cured any error. Carter v. State, 614 S.W.2d 821, 823 (Tex.Crim.App. 1981). 
Appellant's sixth issue is overruled.

 In his tenth issue, appellant contends that during the punishment phase of trial, the
trial court erred in overruling his request for a mistrial because the State made an improper
plea for law enforcement. Appellant's complaint is based on the following jury argument
and objection:

 Prosecutor: You know, I was thinking about voir dire on the first day of this
trial and what the general consensus of the people that
attended [sic] and were a part of the jury pool. The
overwhelming majority of people expressed the idea that
protecting society ---

 Defense: Your Honor, I'm going to object to this argument; one, being
outside the record; two, being an improper plea as to
community expectations.


The trial court sustained the objection and instructed the jury to disregard the comment. 
Appellant's request for a mistrial was denied.

 The State may make a proper plea for law enforcement, including arguing the
relationship between the jury's verdict and the deterrence of crime in general, arguing that
juries should deter specific crimes by their verdicts, and arguing the impact of the jury's
verdict on the community. Borjan v. State, 787 S.W.2d 53, 55-56 (Tex.Crim.App. 1990). 
However, the State is not permitted to argue that the community or any particular group
in the community demands or expects a verdict of guilty or a specific punishment. Id. at
56.

 Prior to defense counsel's objection, the prosecutor made an incomplete statement
about what the majority of people expressed during voir dire prior to jury selection, and
there is nothing in the record reflecting specific demands or expectations of the community. 
In Cortez v. State, 683 S.W.2d 419, 421 (Tex.Crim.App. 1984), the court quoted numerous
cases where juries were improperly asked to follow community expectations, rather than
the law. None of the language condemned by Cortez was used in this instance. If we
assume that the argument was improper, the argument is not so inflammatory as to be
incurable. The trial court's instruction to disregard cured any error. Carter, 614 S.W.2d
at 823. Appellant's tenth issue is overruled.

 In his eleventh issue, appellant contends that during the punishment phase of trial,
the trial court erred in overruling his objection after the State made a harmful jury argument
that invited the jurors to speculate about matters outside of the record. Appellant's
complaint is based on the prosecutor's argument as follows:

 [Defense counsel] wants to talk about how, well, no one was shot, no one
was killed, he wasn't caught actually dealing any drugs. Do not reward this
man because the police officers happened to stop him before something
worse happened.

 You know, what is somebody thinking, what are their intentions when they
have something like this around in their drug business?


Prior to the prosecutor's remark, defense counsel had made the following argument to the
jury:

 You can take into consideration this is a nonviolent crime. We're not talking
about a murder where someone's life has been taken. We're not talking
about aggravated assault where somebody has been seriously injured. 
We're not talking about a sexual assault or an aggravated assault. And I
think you need to keep that in prospective [sic] for this particular case.


 Based on this record, it would not be unreasonable to infer appellant's intent to use
the guns in the course of dealing drugs, if necessary. Guns are designed to shoot
projectiles, which in turn are designed to cause damage to what they strike. The
prosecutor's argument is not an unreasonable inference to be drawn from the evidence
and thus is not improper. Walker, 664 S.W.2d at 340. Further, the prosecutor's remark
was in response to defense counsel's argument and was not improper. Id.; Alejandro, 493
S.W.2d at 231. Appellant's eleventh issue is overruled.

V. EVIDENCE OF EXTRANEOUS OFFENSE 

DURING PUNISHMENT PHASE OF TRIAL


 In his seventh, eighth, and ninth issues, appellant contends that the trial court erred
during the punishment phase of trial by admitting evidence of an extraneous offense
involving appellant's possession of cocaine. Appellant claims the evidence was obtained
as the fruit of a traffic stop in violation of his rights under the Fourth and Fourteenth
Amendments to the United States Constitution and Article I, Section 9 of the Texas
Constitution, and admitted into evidence in violation of his rights under the Constitutions. 
Appellant also contends that admission of the evidence was error because Article 38.23
of the Texas Code of Criminal Procedure requires exclusion of evidence obtained in
violation of any provisions of the laws or Constitution of Texas or of the laws or
Constitution of the United States. 

 During presentation of evidence on punishment, the State introduced evidence
obtained as a result of a traffic stop of a vehicle in which appellant was a passenger. The
stop occurred on September 11, 1997, at 3:03 a.m., in the 5400 block of the northbound
access road to Interstate Highway 27 in Lubbock. The police officer who stopped the
vehicle in which appellant was a passenger and who arrested appellant gave no reason
for the stop other than the fact that the vehicle had its lights on bright:

 Prosecutor: And why did you stop this vehicle? 

 Witness: For driving with its lights on bright.


 After he stopped the vehicle, the officer shined his flashlight into the vehicle. He
did not see anything suspicious. Because the officer observed appellant making "furtive
gestures" like he might be placing something in the floorboard or under the car seat, or
reaching for something in the floorboard or under the car seat, the officer was suspicious
that appellant might have a weapon. Based on his suspicion, he requested appellant to
exit the vehicle. The officer saw appellant reach into his front pants pocket and toss a
"little plastic baggy" on top of a jacket in the backseat floorboard. The officer testified that
the baggy was not located on top of the jacket when he first shined his flashlight into the
vehicle. The baggy was recovered and appellant was arrested. The State's expert
testified that the bag contained cocaine, which, including adulterants and dilutants,
weighed .58 grams.

 In responding to appellant's issues, the State acknowledges that when a search or
seizure occurs without a warrant, the burden of proof is on the State to prove the
reasonableness of the search or seizure. Referring to the stop of the vehicle as an
investigatory stop, the State further acknowledges that to justify the stop, the officer must
have possessed specific articulable facts which could reasonably have led him to suspect
that the vehicle or an occupant of the vehicle had been, was, or soon would be involved
in criminal activity. The State refers us to Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20
L.Ed.2d 889 (1968) and Davis v. State, 947 S.W.2d 240, 244 (Tex.Crim.App. 1997). The
State attempts to justify the stop by asserting that failure to dim the headlights of an
automobile to oncoming traffic violates Tex. Transp. Code Ann. § 547.333(c) (Vernon
1999). (2) Thus, the State reasons, because a vehicle may be stopped and detained for a
traffic violation, (3) the vehicle in which appellant was a passenger was legally stopped. The
State also cites section 547.305(a) of the Transportation Code as "relevant" to the legality
of the stop. Section 547.305(a) provides that a motor vehicle light with a beam brighter
than 300 candlepower shall be directed so that no part of the beam strikes the roadway
more than 75 feet from the vehicle. However, the State does not reference evidence in the
record to support its position with respect to section 547.305(a), nor does the State present
argument showing how the stop was a violation of, and therefore justified by, such section. 

 The Fourth Amendment to the United States Constitution protects persons from
unreasonable searches and seizures. Elkins v. United States, 364 U.S. 206, 222, 102
S.Ct. 1319, 4 L.Ed.2d 1669 (1960); Davis, 947 S.W.2d at 244. Evidence obtained by a
search and seizure in violation of the Constitution is inadmissible at a criminal trial of the
person whose constitutional rights were violated. Mapp v. Ohio, 367 U.S. 643, 655, 81
S.Ct. 1684, 6 L.Ed.2d 1081 (1961). Texas courts follow the guidance of the United States
Supreme Court when interpreting the federal constitution and the rights thereunder. State
v. Guzman, 959 S.W.2d 631, 633 (Tex.Crim.App. 1998).

 Article I, Section 9 of the Texas Constitution recognizes the right of the people to
be secure from unreasonable searches and seizures. Hulit v. State, 982 S.W.2d 431, 434
(Tex.Crim.App. 1998). The test for whether a search or seizure violates Article I, Section
9 of the Texas Constitution is whether, viewing the totality of the circumstances and after
considering the public and private interests that are at stake, the search or seizure was
unreasonable. Id. at 436, 438. The Texas Constitution does not require exclusion of
physical evidence seized in violation of Article I, Section 9. Welchek v. State, 93 Tex.
Crim. 271, ___, 247 S.W. 524, 529 (1922). 

 Article I, Section 9 of the Texas Constitution does not encompass a more stringent
standard than the Terry standard which is used to evaluate a temporary investigative stop
of a vehicle or its occupants under the Fourth Amendment to the federal constitution. 
Rhodes v. State, 945 S.W.2d 115, 117 (Tex.Crim.App. 1997). Because the Fourth
Amendment of the federal constitution affords appellant as much or more protection than
Article I, Section 9 of the Texas Constitution, we analyze appellant's complaints under the
federal Terry standard. If the stop of the vehicle and subsequent actions of the officer are
not in violation of the federal Fourth Amendment and the Terry standards, they do not
violate Article I, Section 9 of the Texas Constitution. Rhodes, 945 S.W.2d at 117. 

 An investigatory stop of a vehicle or person by the police does not violate the Fourth
Amendment if articulable facts support a reasonable suspicion that the vehicle or person
stopped has been or is involved in criminal activity. United States v. Cortez, 449 U.S. 411,
421-22, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981); United States v. Brignoni-Ponce, 422 U.S.
873, 881, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975); Sanders v. State, 992 S.W.2d 742, 748-49 (Tex.App.--Amarillo 1999, pet. ref'd). A "reasonable suspicion" exists if a reasonable
person in the position of the officer making the stop could suspect that the vehicle or
person stopped has been or is connected to criminal activity. United States v. Cortez, 449
U.S. at 421-22; Sanders v. State, 992 S.W.2d at 748-49. The subjective thoughts and
intentions of the officer making the stop are not determinative of whether the articulable
facts support a reasonable suspicion. Whren v. United States, 517 U.S. 806, ___, 116
S.Ct. 1769, 1772, 135 L.Ed.2d 89 (1996). The Fourth Amendment standard is an objective
standard based upon the record presented. Ornelas v. United States, 517 U.S. 690, 116
S. Ct. 1657, 1661-62, 134 L.Ed.2d 911 (1996). 

 Generally, a passenger does not have a possessory interest in an automobile and
therefore lacks standing to complain of its search because there is no infringement of his
expectation of privacy. See Rakas v. Illinois, 439 U.S. 128, 148-49, 99 S.Ct. 421, 433, 58
L.Ed.2d 387 (1978). A vehicular stop, however, results in the seizure of both the driver
and the passenger. Whren, 517 U.S. at ___, 116 S.Ct. at 1772; United States v.
Roberson, 6 F.3d 1088, 1091 (5th Cir. 1993), cert. denied, 510 U.S. 1204, 114 S.Ct. 1322,
127 L.Ed.2d 671 (1994). Thus, an automobile stop is subject to the constitutional
requirement that it not be unreasonable under the circumstances. Whren, 517 U.S. at ___,
116 S.Ct. at 1772. The passenger of a stopped automobile has standing to challenge his
or her seizure as unconstitutional. Roberson, 6 F.3d at 1091; see Lewis v. State, 664
S.W.2d 345, 348 (Tex.Crim.App. 1984). If a traffic stop was unlawful, evidence resulting
from the stop and any subsequent search is tainted and inadmissible. Roberson, 6 F.3d
at 1092; Robinson v. State, 866 S.W.2d 649, 650 (Tex.App.--Houston [14th Dist.] 1993,
pet. ref'd); see Mapp, 367 U.S. at 655. 

 The State bears the burden of proving the legality of warrantless seizures, 
warrantless searches and warrantless arrests. McVickers, 874 S.W.2d at 664. A Fourth
Amendment seizure occurs when a police officer stops the freedom of movement of a
person through intentionally-applied actions. Id. An officer may lawfully stop and detain
a vehicle when the officer has probable cause to believe a traffic violation has occurred. 
 Whren, 517 U.S. at ___, 116 S.Ct. at 1772; United States v. Shabazz, 993 F.2d 431, 435
(5th Cir. 1993); Garcia v. State, 827 S.W.2d 937, 944 (Tex.Crim.App. 1992). A traffic
violation is committed when a vehicle's headlights are not appropriately dimmed to
oncoming traffic or to another vehicle being approached from the rear. Tex. Transp. Code
Ann. § 547.333(c) (Vernon 1999). 

 The standard of review on appeal, and therefore the amount of deference we afford
to the trial court's rulings, generally is determined by which judicial actor is in a better
position to decide the issue. Miller v. Fenton, 474 U.S. 104, 106 S.Ct. 445, 88 L.Ed.2d 405
(1985); Guzman v. State, 955 S.W.2d 85, 87 (Tex.Crim.App. 1997). Appellate courts
afford almost total deference to a trial court's determination of historical facts that the
record supports, especially when the trial court's findings are based on an evaluation of
credibility and demeanor. Id. at 89; See Ornelas, 517 U.S. 690,__, 116 S.Ct. at 1663. 
Appellate courts afford the same amount of deference to trial courts' rulings on application
of law to fact questions if the resolution of those ultimate questions turns on an evaluation
of credibility and demeanor. Guzman, 955 S.W.2d at 89. As to the foregoing two
categories of rulings, we view the record and evidence in the light most favorable to the
trial court's ruling. Id. For purposes of Fourth Amendment analysis we give appropriate
deference to the trial court's determination of historical facts, but we review the decision
of the trial court de novo as to whether the historical facts, viewed from the standpoint of
an objectively reasonable person so situated as was the police officer, amount to
"reasonable suspicion" that the vehicle or a person in it has, is, or will be, engaged in
criminal activity. See Ornelas, 517 U.S. at ___, 116 S.Ct. at 1661-62; Guzman, 955
S.W.2d at 89. 

 There is no evidence in the record establishing that the vehicle in which appellant
was a passenger failed to dim its headlights to oncoming traffic, nor that the vehicle failed
to dim its lights when approaching another vehicle from the rear. The record contains no
evidence of whether the access road on which appellant's vehicle was stopped had
multiple traffic lanes or had only a single lane. No evidence was presented as to whether
the vehicle in which appellant was riding had passed other vehicles going in the opposite
direction, or whether it was following other vehicles. The record does not show whether
the arresting officer was stopped beside the roadway when he observed the vehicle in
which appellant was riding to have its headlights on bright, whether he drove up behind
the vehicle and observed the bright headlights, whether he passed the vehicle going in the
opposite direction on the access roadway, or whether he was perhaps on the interstate
highway when he observed the vehicle's bright lights. The State's position that a traffic
violation justified the officer's stop of the vehicle in which appellant was riding is not valid. 
Further, for purposes of justifying a Fourth Amendment investigatory stop, the fact that an
automobile is being operated on an access road to an interstate highway at 3:00 a.m. with
its headlights on bright is not sufficient to raise a reasonable suspicion that it or one of its
occupants is, has been, or soon will be, involved in criminal activity.

 Because the vehicle was not being operated in violation of a traffic law, and the
State did not prove that the officer possessed articulable facts which could create a
reasonable suspicion that the vehicle or one of its occupants was, had been, or soon
would be, involved in criminal activity, the traffic stop of the vehicle and the resultant
seizure of appellant violated appellant's rights under the Fourth Amendment to the United
States Constitution. The evidence that appellant possessed cocaine was obtained in
violation of appellant's Fourth Amendment rights. The evidence was inadmissible on the
basis of the exclusionary rule of Mapp and its progeny, and on the basis of Tex. Crim.
Proc. Code Ann. art. 38.23(a) (Vernon 1979 & Supp. 2000). The trial court erred in
admitting the evidence. 

 Having concluded that the trial court erred in admitting evidence derived from a
violation of appellant's Fourth Amendment rights, we must determine whether the error
requires reversal of the judgment as to punishment. Texas Rule of Appellate Procedure
44.2 provides the standard by which we are guided. 

 If the appellate record in a criminal case reveals constitutional error that is subject
to harmless error review, the court of appeals must reverse the judgment unless the court
determines beyond a reasonable doubt that the error did not contribute to the conviction
or punishment. Tex. R. App. P. 44.2(a). A constitutional error within the meaning of Rule
44.2(a) is an error that directly offends against the United States Constitution or the Texas
Constitution without regard to any statute or rule that might also apply. Tate v. State, 988
S.W.2d 887, 890 (Tex.App.--Austin 1999, pet. ref'd). With respect to the erroneous
admission or exclusion of evidence, constitutional error is presented only if the correct
ruling was constitutionally required. Id. Any other error, defect, irregularity, or variance
that does not affect substantial rights must be disregarded. Tex. R. App. P. 44.2(b).

 Certain federal constitutional errors labeled by the United States Supreme Court as
"structural" errors (4) require reversal of the case without consideration of whether the error
caused harm. See Arizona v. Fulminante, 499 U.S. 279, 309-10, 111 S.Ct. 1246, 113
L.Ed.2d 302 (1991); Cain v. State, 947 S.W.2d 262, 264 (Tex.Crim.App. 1997). Such
cases are categorically immune from harmless error review. Fulminante, 499 U.S. at 309-10; Cain, 947 S.W.2d at 264. Additionally, if the effects of an error in a particular case
defy harmless error analysis or the data is insufficient to conduct a meaningful harmless
error analysis, the error will not be proven harmless, Fulminante, 499 U.S. at 309-10; Cain,
947 S.W.2d at 264, whether the error is constitutional or non-constitutional. See Heard
v. State, 995 S.W.2d 317, 321-22 (Tex.App.--Corpus Christi 1999, pet. ref'd). However,
the erroneous admission of evidence obtained in violation of Fourth Amendment rights has
not been declared by the Supreme Court to be a "structural" error, see Gonzales v. State,
994 S.W.2d 170, 171 n.4 (Tex.Crim.App. 1999), nor is this the type of record which defies
harmless error analysis for the error in question. See Heard, 995 S.W.2d at 321-22. 
Therefore, we proceed to a harmless error analysis pursuant to Rule 44.2. 

 We first determine if the error in admitting evidence was constitutional error as
contemplated by Rule 44.2(a). In Mapp, the Supreme Court held that the federal
constitution requires that evidence obtained in violation of an accused's Fourth
Amendment right to privacy be excluded from trial. Mapp, 367 U.S. at 655. Various
opinions of the Court and of individual justices subsequent to Mapp have posited that the
exclusionary rule which was explicitly held to be of constitutional origin by Mapp was not
necessarily of such genesis. For example, in United States v. Calandra, 414 U.S. 338,
348, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974), the Supreme Court stated that the exclusionary
rule is a judicially-created means of deterring illegal searches and seizures. In Stone v.
Powell, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976), the Court considered
whether state prisoners making claims that they were convicted because evidence
procured by unlawful searches and seizures was admitted at their trials should be allowed
to assert a constitutional violation claim in federal habeas corpus proceedings. The Court
reviewed the development of the exclusionary rule which was made applicable to the
states by Mapp. Stone, 428 U.S. at 482-84. At the outset of its review the Court noted that
the exclusionary rule was a judicially-created means of effectuating the rights secured by
the Fourth Amendment and that prior to Weeks v. United States, 232 U.S. 383, 34 S.Ct.
341, 58 L.Ed. 652 (1914), and Gouled v. United States, 255 U.S. 298, 41 S.Ct. 261, 65
L.Ed. 647 (1921), no barrier existed to the introduction in criminal trials of evidence
obtained in violation of the Amendment. Stone, 428 U.S. at 482. The Court also noted
that in Mapp only four justices adopted the view that the Fourth Amendment itself requires
exclusion of unconstitutionally-seized evidence in state criminal trials; that Justice Douglas
concurred; and that Justice Black concurred on the basis that the Fourth Amendment
alone was not sufficient basis for the exclusionary rule, but that the rule emerged when the
Fourth and Fifth Amendments were considered together. Id. at 484 n.21. The Court then
forthrightly stated that "Post-Mapp decisions have established that the [exclusionary] rule
is not a personal constitutional right." Id. at 486. 

 Language in the recent decision of Pennsylvania Bd. of Probation and Parole v.
Scott, __U.S.__, 118 S.Ct. 2014, __ L.Ed.3d__(1998) directly addresses the issue which
we must answer in determining whether the admission of the illegally-seized evidence at
appellant's trial was federal constitutional error as referred to by Rule 44.2(a). In Scott,
the Court considered whether the rule excluding evidence seized in violation of the Fourth
Amendment applies in state parole revocation hearings. The Court held that the rule does
not so apply. In beginning its discussion of law surrounding the issue, the Court succinctly
and clearly stated its position on the question now before us: "We have emphasized
repeatedly that the State's use of evidence obtained in violation of the Fourth Amendment
does not itself violate the Constitution." __ U.S. at __, 118 S.Ct. at 2019. We conclude
that the trial court's error in admitting evidence obtained in violation of appellant's Fourth
Amendment rights did not directly offend the United States Constitution, was not required
by the Constitution itself, and therefore was not federal constitutional error for purposes
of Rule 44.2(a). See Tate, 988 S.W.2d at 890. 

 As we have previously noted, the Texas Constitution does not require exclusion of
physical evidence seized in violation of Article I, Section 9. Welchek v. State, 93 Tex.
Crim. 271,__, 247 S.W. 524, 529 (1922). Even if the cocaine had been obtained from
appellant in violation of his rights under the Texas Constitution, a question we do not
decide, the admission of the evidence at trial would not have been Rule 44.2(a)
constitutional error based on its being a direct offense to, or exclusion of the evidence
being required by, the Texas Constitution. See Tate, 988 S.W.2d at 890.

 Because the error in admitting the evidence was not constitutional error, we use the
standard of Rule 44.2(b) to determine whether the error warrants reversal. Under Rule
44.2(b) an error affects a substantial right of the defendant when the error has a
substantial and injurious effect or influence in determining the jury's verdict. King v. State,
953 S.W.2d 266, 271 (Tex.Crim.App. 1997). A criminal conviction will not be reversed for
non-constitutional error if the appellate court, after examining the record as a whole, has
fair assurance that the error did not influence the jury, or had but a slight effect. See
Johnson v. State, 967 S.W.2d 410, 417 (Tex.Crim.App. 1998).

 The record shows that appellant was in possession of two plastic bags containing
smaller bags of cocaine. In the residence where appellant was sleeping when he was
arrested, the police found both loaded and unloaded guns, ammunition, a knife, scales and
other obvious drug paraphernalia. Testimony was given to the effect that drugs packaged
like those seized from appellant were commonly part of drug dealing activities. During the
punishment phase of trial, the State produced evidence of other offenses by appellant in
addition to evidence of his cocaine possession. The other offenses included a Class A
misdemeanor assault offense, three Class B misdemeanor theft offenses, a Class A
misdemeanor offense of unlawfully carrying a weapon, and a third-degree felony offense
of burglary of a vehicle. Approximately one and one-half years before his arrest on the
charges for which he was on trial, appellant had been sentenced to five years in prison,
probated for five years. During final summation, the prosecutors reminded the jury of how
recently appellant appeared in court for sentencing for another crime and how little he
seemed to be affected by his experience. Evidence of an arrest for drug possession
occurring after the date of the crime for which appellant was on trial could have been very
important to a jury in determining appellant's sentence. We note, however, that in final
summation appellant's counsel argued to the jury that the cocaine possessed by appellant
was illegally seized and that the court's charge instructed them not to consider such
evidence if the jury found that the evidence was illegally obtained. The possible
punishment range for appellant's crime was confinement for five years to ninety-nine years
and a fine of up to ten thousand dollars. The prosecutors urged the jury to assess a
minimum of forty-five years confinement as punishment. Yet the jury assessed only
twenty-five years confinement and a fine of $6,000. Upon this record we conclude that the
effect of the trial court's error in admitting the illegally-obtained evidence was not
substantial and injurious, but was slight, at most, and therefore must be disregarded. Tex.
R. App. P. 44.2(b). 

 The judgment is affirmed.



 Phil Johnson

 Justice











Publish. 


1. Section 481.123(a) provides that a controlled substance analogue is considered
to be a controlled substance listed in Penalty Group 1 or 1-A if the analogue in whole or
in part is intended for human consumption and:

 (1) the chemical structure of the analogue is substantially similar to the chemical
structure of a controlled substance listed in Schedule I or Penalty Group 1 or 1-A; or

 (2) the analogue is specifically designed to produce an effect substantially similar
to or greater than the effect of a controlled substance listed in Schedule I or Penalty Group
1 or 1-A.

 Section 481.123(g) further provides that this section does not apply to: (1) a
controlled substance.


 Section 481.112 provides in part:

(a) Except as authorized by this chapter, a person commits an offense if the person
knowingly or intentionally manufactures, delivers, or possesses with intent to manufacture
or deliver a controlled substance listed in Penalty Group 1.

* * * * *


(d) An offense under Section (a) is a felony of the first degree if the amount of the
controlled substance to which the offense applies is, by aggregate weight, including
adulterants or dilutants, four grams or more but less than 200 grams.


Tex. Health & Safety Code Ann. (Vernon Supp. 2000).
2. Section 547.333(c) provides:

(c) A person who operates a vehicle on a roadway or shoulder shall select a distribution
of light or composite beam that is aimed and emits light sufficient to reveal a person or
vehicle at a safe distance ahead of the vehicle, except that:

 (1) an operator approaching an oncoming vehicle within 500 feet shall select:

 (A) the lowermost distribution of light or composite beam, regardless of road
contour or condition of loading; or 

 (B) a distribution aimed so that no part of the high-intensity portion of the
lamp projects into the eyes of an approaching vehicle operator; and

 (2) an operator approaching a vehicle from the rear within 300 feet may not select
the uppermost distribution of light. 

 
3. McVickers v. State, 874 S.W.2d 662, 664 (Tex.Crim.App. 1993).
4. See Gonzales v. State, 994 S.W.2d 170, 171 n.4 (Tex.Crim.App. 1999) for a list 
of classes of cases in which the Supreme Court has found "structural" errors.